## DETERMINED IN THE

# FOURTH DEPARTMENT

### IN THE

## APPELLATE DIVISION,

## December, 1896.

THOMAS DONOHUE, Appellant, *v.* THE SYRACUSE AND EAST SIDE RAILWAY COMPANY, Respondent.

*Negligence — an action therefor cannot be converted into one for a nuisance — matters in avoidance must be pleaded.*

In an action brought to recover damages for personal injuries, based upon the alleged negligence of the defendant, a street railway corporation, in constructing and maintaining its railway and the crossing over it, the plaintiff is not entitled to a charge that the digging by the defendant of a trench, in which rails were laid, and leaving it open for six months, constituted the trench a nuisance *per se*, and that, consequently, the railroad corporation was liable for such nuisance and any accident caused thereby, independent of any question of negligence, as the request is not germane to the issue in the action.

Where such defendant in its answer simply alleges that the accident that occurred to the plaintiff "was occasioned by his own negligence and want of care, and not by the negligence or want of care of the defendant," the defendant is not in a position, under the pleadings, to justify its conduct in maintaining its railway and crossing in the manner above stated, by showing that the city authorities had compelled it to suspend operations thereon.

APPEAL by the plaintiff, Thomas Donohue, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Onondaga on the 14th day of February, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of Onondaga, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office denying the plaintiff's motion for a new trial made upon the minutes.

*E. C. Wright,* for the appellant.

*William S. Andrews,* for the respondent.

HARDIN, P. J.:

This action was begun April 22, 1895, to recover damages for a personal injury caused, it is alleged, by the negligence of the defendant

In the morning of April 10, 1895, the plaintiff, while crossing the defendant's uncompleted railway at the corner of Oak and Henderson streets, in the city of Syracuse, fell and was injured. The work on defendant's road was suspended for some months, and while it was so suspended the defendant maintained a temporary crosswalk made of ties crossing the trench excavated for its track.

A cause of action for creating and maintaining a nuisance in the street is not alleged in the complaint, but the action is to recover damages for the alleged negligence of the defendant in constructing and maintaining its railway and the crossing over it. It is not alleged in the complaint that the defendant was unlawfully in the street — a trespasser — nor is it alleged that being lawfully there it erected or maintained a nuisance.

The court submitted to the jury three questions: (1) Was the defendant negligent? (2) If it was negligent, did its negligence cause the accident? (3) Did the plaintiff, by his negligence, contribute to the accident? These questions were well and clearly submitted to the jury, and but a single exception was taken to the manner in which they were submitted, which it is unnecessary to discuss. At the conclusion of the charge the defendant's counsel asked that the jury be instructed as follows: "I ask the court to charge that the digging of this trench in which the rails were laid, and the leaving that trench open for a considerable length of time, from December until the following July, that the trench was *per se* a nuisance, and that the railroad company was liable for such nuisance, and for an accident occurring by reason thereof in any event, independent of any question of negligence.

This was refused and an exception taken. In this there was no error, for, as before stated, this action was not brought to recover damages arising from a nuisance, but from the alleged negligence of the defendant, and the request was not germane to the issue.

More difficulty arises over the admission of evidence. The defend-

ant, by its answer, contented itself with a denial of negligence on its part, and the allegation that the accident was occasioned by the plaintiff's contributory negligence. It is not alleged as a justification for leaving the street in the condition in which it was, that it was engaged lawfully in constructing a railway in this street, and that while so engaged its construction was stopped by the action of the city authorities. The defendant was permitted to prove, as against the objection of the plaintiff that no such defense was pleaded, that the city authorities prevented the defendant from completing the work. The defendant put in evidence the franchise granted on December 22, 1890, by the city of Syracuse to the Syracuse and Eastwood Heights and De Witt Railroad Company. Before that was admitted in evidence, the answer of the defendant was amended " by adding thereto an allegation that the defendant, prior to commencing work on Oak street, obtained from the city of Syracuse certain franchises authorizing the construction of the road through and along various streets, Oak street being among the number."

The resolutions granting the franchises as aforesaid contained a clause in the following language : " That said company, its successors and assigns, shall, whenever, and as required, and under the supervision of the Commissioner of Public Works, have and keep in permanent repair the portion of every street and avenue between its tracks and for a space of two feet in width outside of and adjoining the outside rail of its tracks so long as such tracks shall be used or kept in said streets or avenues. That portion of said streets and avenues so to be kept in permanent repair shall, unless otherwise directed by the common council, at all times and through the entire length of said route, be made to conform in the manner and character of pavement and material used therefor with the remaining portions of said streets. * * * Whenever the streets through which said tracks are to be laid are not graded, the railroad company shall make the entire traveled portion of the streets from gutter to gutter line upon an even grade, so that said streets shall be passable for teams and wagons upon each side of the tracks; all such grading and location of tracks shall be under the supervision and control of the Commissioner of Public Works ; all crosswalks are to be replaced in a condition satisfactory to the Commissioner of Public Works."

A subsequent resolution was passed by the common council renewing the former one and extending the period for the completion of the road for one year from the 1st day of August, 1894, upon certain conditions mentioned, and among the conditions was a provision as follows: " Said company, its successors and assigns, shall, whenever, and as required, and under the supervision of the Commissioner of Public Works, have and keep in permanent repair the portion of the streets, or parts thereof, in which its tracks are or hereafter may be laid between its tracks, the rails of its tracks, and including a space of two feet outside and adjoining the outside rails of its tracks, so long as such tracks shall be used or kept in such streets or parts thereof; the portions of said streets so to be kept in permanent repair shall, unless otherwise directed by the common council, at all times throughout the entire length of said route, be made to conform in the manner and character of the pavements and material used therefor with the remaining portion of said streets."

It was conceded upon the trial that the defendant is the successor in interest of the Syracuse, Eastwood Heights and De Witt Railroad Company. When the defendant offered in evidence a resolution of the common council of the city of Syracuse, adopted December 3, 1894, the plaintiff objected thereto and stated, viz.: " I never had any notice of this resolution whatever; it should have been pleaded."

The objection was overruled and an exception was taken by the plaintiff. Thereupon the plaintiff's counsel further objected " on the ground that it is incompetent, immaterial, not pleaded, and not within the pleadings."

The objections were overruled and an exception was taken in behalf of the plaintiff. A resolution was then read in evidence, containing the following language:

" *Resolved*, That the Commissioner of Public Works be and he is hereby directed to suspend the work of grading Oak and Henderson streets pending adjustment of grade by the city engineer."

Thereupon the defendant offered in evidence " a resolution of the common council of Syracuse passed June 17, 1895." This was objected to as "incompetent, immaterial, not pleaded, and not within the pleadings." The objections were overruled and an exception was taken by the plaintiff. Thereupon the defendant read in evidence a resolution containing the following language:

" *Resolved,* That the engineer be and he is hereby authorized to re-establish the grade on Oak street between Henderson and Manilla, plans to be submitted for approval at our next regular meeting."

Then the defendant called as a witness one Mather, who was the engineer of the Syracuse and East Side Railway Company, and he stated that he knew Johnson, the commissioner of public works, and knew his handwriting. He was then shown a letter, and the witness continued: "This was handed to me personally by Mr. Johnson on the day it bears date." The letter was then offered in evidence, and the plaintiff objected to it as "incompetent, improper, hearsay and not pleaded."

The objections were overruled and the plaintiff took an exception. Thereupon the letter was received, and it contained the following language:

"DEPARTMENT OF PUBLIC WORKS.  CITY HALL.
"SYRACUSE, N. Y., *Dec.* 4, 1894.

" SYRACUSE & EAST SIDE R. R. Co.:

" GENTLEMEN.—You are hereby notified to suspend work of laying your tracks and grading along Oak street in compliance with a resolution passed by the common council at their regular meeting held Dec. 3, '94.

"H. B. JOHNSON, *Com.*"

The witness continued and stated, viz.: "A day or two before this letter I had some conversation with Mr. Johnson."

This conversation was objected to on the grounds already stated, and it was received by the court and an exception was taken, and the witness was allowed to state, viz.: "He called my attention to the resolution, and I said we wanted some official notification. He told me to call next day and he would give me a letter. This was December 3d. * * * He would rather we should not touch anything at all; we should absolutely stop work on Oak street. I had some talks with the city engineer." The counsel for the defendant then asked for that conversation, and offered to prove that Mr. Mather went to the city engineer repeatedly and requested that the grade be given him so that the defendant could continue

the work. This was objected to upon the same grounds, and the objections were overruled. The witness then continued as follows: " I had asked the engineer what we should do as his grade was off. He had established a grade a straight line between the intersection of Fenigan avenue. I asked him what I should do. He said leave it alone until I get some other grade; that there was nothing else for me to do. I had several conversations with him scattered through the spring and early summer. I got the new grade early in July. I had but this one conversation with Mr. Johnson."

In chapter 252 of the Laws of 1884, section 9, there was a provision requiring railroad corporations, within incorporated cities, under the supervision of local authorities, to " have and keep in permanent repair the portion of every street and avenue between its tracks, the rails of its tracks and a space two feet in width outside and adjoining the outside rails of its track or tracks so long as it shall continue to use such tracks so constructed under the provisions of this act." The section also contained some other provisions not necessary to refer to at this time. That chapter was repealed by chapter 565 of the Laws of 1890, and substantially the same provision that we have quoted was incorporated in section 98, page 1112 of the Session Laws of 1890, and this latter section provided that such corporations " shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe." That section also contained other provisions imposing a duty upon railroad corporations occupying streets in a city or village.

We thus see that, by force of the franchises granted to the defendant, or its predecessor, and the statute, certain burdens and duties were imposed upon the defendant in respect to the streets traversed by its road. The defendant, by the introduction of the resolution and letter to which we have referred, sought to justify its omission to restore the street to its former condition, and to escape the alleged liability by reason of its neglect in that regard. It, however, did not set up in its answer a defense or a justification on account of the action of the common council. The answer admits

that the street where the accident occurred was a public thoroughfare in the city of Syracuse, and it then denies the other allegations in the complaint, and alleges that the accident that occurred to the plaintiff " was occasioned by his own negligence and want of care, and not by the negligence or want of care of defendant."

In *Clifford* v. *Dam* (81 N. Y. 53) it was said that where permission is given by a municipal authority to interfere with a street or sidewalk for the private use and convenience of a party, " the person obtaining such permission must see to it that the street is restored to its original safety and usefulness." In that case an offer was made on the trial to show that the defendant obtained the usual permission from the proper authorities authorizing the construction of a vault under a sidewalk and a coal hole. The offer was objected to and excluded on the ground, among others, that it was not pleaded; and the court held that the ruling was right, and further " that if a permit was material, it could only be to mitigate the act from an absolute nuisance to one involving care in the construction and maintenance; that it was necessary not only to plead it, but to allege and prove a compliance with its terms, and that the structure was properly made and maintained to secure the same safety to the public that the sidewalk would have done without it."

In *Weaver* v. *Barden* (49 N. Y. 289) it was held that under a general denial in an answer the defendant has the right to give evidence controverting any facts necessary to be established by the plaintiff, " but not to prove a defence founded upon new matter." That case was referred to with approval in *Dubois* v. *Hermance* (56 N. Y. 674).

In *Milbank* v. *Jones* (127 N. Y. 376) the case of *Clifford* v. *Dam* (*supra*) was referred to, and the rule recognized that under a general denial the defendant may give evidence tending to disprove any fact which the plaintiff is bound to prove in order to recover, and that if other facts are relied upon as a defense, the defendant, in order to avail himself of them, must plead them.

The rule of pleading to which we have adverted is referred to in the 3d volume of the Encyclopædia of Pleading and Practice, at page 858, where the author is discussing the rule of pleading in an action brought by a common carrier; and he says: " Under the Code system of pleading the effect of the general denial is simply to put

in issue the material allegations of the complaint or petition; and under it the defendant can show such facts only as disprove the facts alleged, it being necessary to plead especially all matters in confession and avoidance."

In volume 1 of the Encyclopædia of Pleading and Practice, at page 851, it is said : " All matter in avoidance of the cause of action must be pleaded." (See, also, Abb. Tr. Brief on Pleadings, §§ 466, 756, 964.)

It is quite obvious that the plaintiff was surprised when the resolution of December 3 and the notification of December 4, 1894, were received in evidence, and we think the exceptions taken by the plaintiff to the rulings made in receiving them, as well as to those made in receiving the evidence of the conversation between Mather and Johnson, present error. The evidence so received was referred to by the learned trial judge in yielding to a request made by the defendant, as he charged the jury " that the railroad company, in laying its tracks, was bound to obey such instructions as were given it by the common council in regard thereto."

When that charge was made in response to a request made by the defendant, the plaintiff took an exception thereto.

The foregoing views lead to the conclusion that a new trial should be ordered.

All concurred, except ADAMS, J., not sitting.

Judgment and order reversed and a new trial ordered, with costs to abide the event.