MALONEY v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. January 10, 1913.)

1. MUNICIPAL CORPORATIONS (§ 796*)—INJURIES ON STREETS—NEGLIGENCE.

Where the condition of a part of a street next to a railroad track, from which the asphalt was removed for repaving, was obvious, the city was not reasonably bound to erect a barrier along the side of the track to prevent driving on that part of the street.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1655; Dec. Dig. § 796.*]

2. MUNICIPAL CORPORATIONS (§ 806*)—DEFECTS IN STREETS—ASSUMPTION OF RISK.

The driver of a fire engine assumed the risk of being jolted off of his seat by driving over a part of a street from which the asphalt had been

removed for repaving, though such part was not barricaded from the other part.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1678, 1682; Dec. Dig. § 806.*]

3. STREET RAILROADS (§ 113*)—ACTION FOR INJURIES ON STREETS—DEFENSES —EVIDENCE.

Evidence that the city had contracted for the paving of a part of a street over which plaintiff was driving when jolted from his wagon, and which was adjacent to the tracks of defendant railroad company, under a contract requiring the contractor to repair the pavement for 15 years, which had not expired, and had rendered a bill to the railroad company for its part of the expense, was admissible as constituting a defense to that company's liability for plaintiff's injuries.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 229–238; Dec. Dig. § 113.*]

Miller and Dowling, JJ., dissenting in part.

Appeal from Trial Term, New York County.

Action by Jane E. W. Maloney, as administratrix, against the City of New York and another. From a judgment for plaintiff, and an order denying motions for a new trial, defendants appeal. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Loyal Leale, of New York City (Terence Farley, of New York City, on the brief), for appellant City of New York.

Charles E. Chalmers, of New York City, for appellant Central Park, N. & E. R. R. Co.

John F. McIntyre, of New York City, for respondent.

LAUGHLIN, J. The decedent, Joseph White, was a member of the fire department of the city of New York, and assigned to duty as driver of engine No. 16, which was housed on East Twenty-Fifth street, between Second and Third avenues, in the borough of Manhattan, and in response to an alarm of fire from the vicinity of Eighteenth street and First avenue at 3:20 p. m. on the 28th day of March, 1910, he was driving a team of three horses attached to the engine east on Twenty-Fifth street to First avenue and southerly on First avenue, and at a point about 40 feet north of Twenty-Third street he was thrown from the engine and was run over and killed. This action was brought to recover the damages sustained by his sisters.

The defendant railroad company owned and operated a double street railway track in First avenue, and at the time of the accident the space between the outer rails of the tracks was paved with granite blocks, and that part of the pavement concededly was in good condition. The street had formerly been paved with bluestone, and thereafter asphalt pavement had been laid over the stone between the outer rails of the railway tracks and the curb on either side of the street. On the 8th day of September, 1909, the city had duly let a contract to the defendants Rafferty Bros., to repave the street with granite block pavement

on concrete foundation between the outer rails of the tracks and the curbs from the southerly line of Twentieth street to Fifty-Ninth street, with certain exceptions, which do not affect the questions presented. for decision. The contractors were required to complete the work within 150 consecutive working days after notice to commence as provided in the contract, exclusive of bad weather and of delay caused by the city. They duly entered upon the work in the month the contract was made, and pursuant to directions, which the contract obligated them to observe, they proceeded to repave the street from Thirty-Fourth street northerly. The old asphalt pavement had been neglected, and in places it was, as described by the engineer in charge of the work, "full of holes and ruts"; and with a view to making it more safe for public travel and preparatory to repaving it, the engineer ordered the contractors to remove the old asphalt pavement and its. foundation down to the surface of the old bluestone pavement, between Twenty-Third and Twenty-Fourth streets on the westerly side of the street from the curb to what the engineer termed the "railroad area," meaning thereby within from two to three feet of the westerly rail of the westerly street railway track. This was done at a time variously estimated by the witnesses as from two to six weeks before the accident. Public travel was not excluded from the street, either by barricade, notice, or otherwise; but public travel within the exterior rails of the two street railway tracks was perfectly safe, and the asphalt pavement on the easterly side of the street apparently was in a reasonably safe condition for travel, and on the westerly side it was plainly to be seen, and evident to any driver of a vehicle, that the old asphalt pavement had been removed, leaving the surface of the street on that side six inches or more lower than the corresponding parts of the surface on the easterly side. In removing the old asphalt pavement, the strip thereof left next to the westerly rail was, as already indicated, irregular in width, varying from two to three feet; and its surface was worn and uneven, and at points it was wholly worn away. This was its condition where the accident happened.

Some of the evidence tends to show that there was a depression nearly nine feet in length along the westerly side of the westerly rail where the asphalt had been worn off down to the bluestone pavement, in which there was also a slight depression, and that the wheel of a vehicle going southerly coming into it would rise again gradually onto a strip of asphalt, and then pass into another similar, but shorter and more shallow, depression. The decedent had driven through this block to a fire after the asphalt pavement had been so removed and shortly before the accident, and several times within a few months prior to the accident. It may fairly be presumed that he knew the condition of the street. He might have driven down Second avenue, and that route would have been the same length. As he drove down First avenue, another vehicle was traveling southerly on the southbound track ahead of him, and it did not afford him room to pass without turning out of his course. He turned first to the left onto the north-bound track, and then after passing the vehicle, to the right

again, and in so doing the right wheels crossed to the right of the westerly rail, and as he straightened his course down the avenue, the off horse and right wheels remained westerly of the westerly rail. He was driving at a speed of about nine miles an hour. The other firemen attached to engine No. 16 were riding on the rear of the engine, and could not see the decedent, who was seated in front. The evidence tends to show that the right wheels passed into one or both of the depressions I have described, and that the jolt or jar incident thereto precipitated the decedent to the street on the right-hand side, and that he was run over by the engine. If a vehicle passed at right angles from the railway tracks westerly at the point where the larger of these depressions was, the evidence tends to show that there would have been a drop of from eight inches to a foot from the surface of the rail to the lowest point in the depression; but a witness for the plaintiff, who was a fellow fireman with the decedent, measured it and found it to be only eight inches. The wheels of the engine did not pass over the rail and into the depression. At the time of the accident the course of the engine was parallel with the rails of the track, and the depth of the depression as the wheels thus entered it was some inches less than the depth measured from the surface of the rail. A wagon had broken down at this point about one week before this accident.

[1] The action was brought against the city, the street railroad company, and the contractors. The complaint was dismissed as to the contractors, and a verdict was rendered against the other two defendants. The evidence was sufficient to charge both appellants with notice of the condition of the pavement. The city was proceeding with due diligence to have the street repaved. It was under no obligation to repair the pavement outside the railway tracks, where it was about to lay a new pavement. The real question in the case, so far as the city is concerned, is whether it was negligent in not cutting off travel from this part of the street altogether. Part of the street, however, was perfectly safe, and therefore negligence cannot be predicated against its leaving the street easterly of the westerly street railroad track open for travel. It would not be reasonable to require the city to erect a barrier along the westerly side of the railroad track to prevent driving off the track to the west as did the decedent. The conditions there were as obvious to a driver under ordinary circumstances and in broad daylight as if notices had been posted. I deem it doubtful whether the evidence was sufficient to present a question of fact with respect to the city's negligence; but, if so, I think the verdict is against the weight of the evidence on that point.

[2] I would not attribute negligence to the decedent in driving in the manner or at the speed shown by the evidence; but I think that in so doing he assumed the risk of being jolted off the engine. It may well be that he relied on a safety strap which was designed to prevent drivers being thrown from their seats. Ordinarily the safety strap remained hooked at one end, and the driver, on taking his seat, passed it around his waist and hooked it at the other end. The record does not show whether this strap was thus secured. It merely

appears that such a strap, apparently unbroken, was found near the scene of the accident.

[3] The street railroad company offered in evidence the contract made August 30, 1897, by the city with the Warren-Scharf Asphalt Paving Company for paving this street, between the curbs and the outer rails of the street railway tracks, with asphalt, together with the specifications and bond to keep and maintain the pavement in proper repair for a period of 15 years, which had not expired, and offered to prove that the city had rendered a bill to it for its proportionate share of the expense, and that the city had made another contract for the performance of work which the asphalt contractor failed to perform. This evidence was excluded, on the ground that it had not been pleaded. Counsel for plaintiff, after interposing this objection, withdrew it, and consented that the answer might be amended without terms, and offered to discontinue the action as against the railroad; but the court, on objection taken by other defendants, allowed neither the amendment nor discontinuance. The learned counsel for the railroad company contends, upon the authority of Roemer v. Striker, 142 N. Y. 134, 36 N. E. 808, that under its denial of negligence, and of duty to keep the pavement in repair, this evidence was admissible; but it is contended on behalf of plaintiff, on the authority of Donohue v. Syracuse & East Side Ry. Co., 11 App. Div. 525, 42 N. Y. Supp. 808, that it was necessary for the railroad company to plead that the city had, in effect, by the contract lawfully assumed the railroad company's duty under the statute (section 98, Railroad Law [Laws 1890, c. 565], and chapter 475, Laws of 1895), and that the railroad, having been lawfully precluded from keeping this part of the street in repair, and having become liable to the city for reimbursement, if it had not in fact already paid the bill, could not be held liable therefor.

I am of opinion that the court erred in denying the motion to amend the answer and in excluding the evidence, which might have constituted a complete defense. See Binninger v. City of New York & Brooklyn Heights Ry. Co., 177 N. Y. 199, 69 N. E. 390.

It follows that the judgment and order should be reversed on both appeals, and a new trial granted, with costs to appellants to abide the event.

INGRAHAM, P. J., and McLAUGHLIN, J., concur.

MILLER and DOWLING, JJ. We concur in the opinion of Mr. Justice LAUGHLIN as to the defendant railroad company; but dissent, and vote to affirm the judgment against the city.