(18 App. Div. 447.)

ARMBRUSTER v. AUBURN GASLIGHT CO.

(Supreme Court, Appellate Division, Fourth Department.     June 12, 1897.)

NEGLIGENCE—ESCAPE OF GAS.

A gas company, furnishing gas through mains in the streets, is bound to keep its gas constantly under control, and prevent it from escaping into dwelling houses or places of business, and if the gas does so escape, and causes damage, the company is liable.

Appeal from trial term, Cayuga county.

Action by Carl Armbruster against the Auburn Gaslight Company. Judgment for plaintiff. From an order denying a new trial, and the judgment, defendant appeals.  Affirmed.

A verdict of $2,000 was taken at a trial term in Cayuga county, in January, 1896.  A motion to set aside the verdict was made on the minutes, upon the usual grounds, and denied, and a judgment was entered, and the appeal here is from the order and the judgment.  The action was commenced in June, 1895, to recover damages which the plaintiff alleges he sustained.  He owned a green-house, and was a florist, with his premises at the corner of Clark street and Aurelius avenue, in the city of Auburn.  His complaint alleges "that said defendant is engaged in the manufacturing and sale of illuminating gas in the said city of Auburn, and has for that purpose numerous pipes extending through the streets of the said city from the manufacturing plant where the said gas is manufactured, the said pipes carrying and distributing the said gas to the customers of the said defendant; that the pipes or mains of the said defendant, for the purposes aforesaid, have been laid and extended by the said defendant through said Aurelius avenue and Clark street, in front of and near the premises of the said plaintiff; that said pipes or mains the said defendant was bound to keep in repair, and maintain the same in a tight and safe and proper condition, and the plaintiff charges  *  *  *  that said pipes or mains, at some point near the residence of said plaintiff, became defective and imperfect some time in the year eighteen hundred and ninety-three, of which the said defendant had notice, and thereafter a large amount of gas escaped, and percolated through the ground, and followed the sewer pipes which had been constructed under said plaintiff's residence, and entered and filled said plaintiff's greenhouse and residence aforesaid with unwholesome and noxious gas, and caused the plants and flowers which plaintiff had in stock, and on which he had expended large sums of money, to sicken and die."  Defendant's answer admits the incorporation and business of the defendant "as alleged in the complaint"; and it then alleges "that the pipes of the defendant in Aurelius avenue and Clark streets were laid in a safe and proper manner, and that defendant has used due diligence to keep and maintain the same in such safe and proper condition; that defendant had no notice of any alleged leak in its mains until in or about the month of February, 1895, whereby gas was alleged to escape into plaintiff's premises."  It also contained a denial of some of the allegations of the complaint.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Sereno E. Payne and John VanSickle, for appellant.
E. C. Aiken, for respondent.

HARDIN, P. J.   The complaint of thè plaintiff states facts sufficient to warrant a recovery for the alleged wrongful act of the defendant.

In Carhart v. Gaslight Co., 22 Barb. 312, it was said in the opinion of E. Darwin Smith, J.:

"That gas works are to be placed in the class of erections which are not within the ordinary and usual purposes to which real estate is applied; and that, whenever they create a special injury, they are to be regarded as a private nuisance, for which an action will lie in respect to the special injury."

His proposition was supported by numerous authorities.   That case was cited and followed in Hutchins v. Smith, 63 Barb. 255.

In Evans v. Gas Co., 148 N. Y. 115, 42 N. E. 513, it was said:

"Doubtless, the defendant was lawfully in the street, but it was bound to use its rights, and to conduct its operations, so as not to inflict injury upon neighboring property."

Plaintiff gave considerable evidence tending to establish the fact that the gas from the defendant's mains escaped into and upon his premises, and caused injury to the contents of his greenhouse.   On the other hand, there was some evidence given by the defendant tending to controvert some of the evidence offered by the plaintiff; and the defendant also gave some evidence from which it asked an inference to be drawn that the injuries which the plaintiff suffered were occasioned by reason of the escape of sewer gas into and upon the premises of the plaintiff.   The trial judge carefully submitted the evidence to the jury, and it must be assumed from their verdict, which is abundantly sustained by evidence, that the plaintiff's property was injured by the illuminating gas from the defendant's mains.   From the finding it follows that the defendant has been guilty of a wrong for which it is liable to compensate the plaintiff in damages.   The nature and extent of the injury were very clearly shown by the evidence at the trial.   The effect upon the plants in the greenhouse was minutely described.   Prof. Duncan, who had made an analysis of the constituents of the gas manufactured by the defendant, stated that it contained "carbon monoxide"; and he adds:

"The effects of carbon monoxide upon plant life are exceedingly injurious to the plant.   It has two distinct effects, both of them bad.   One effect is, it is taken up by the plant instead of the plant's ordinary atmospheric food.   The ordinary food of plants, or the atmospheric food, is carbon dioxide.   Carbon monoxide is an entirely different gas, and the plant takes it up instead of its ordinary food, and the effect of this is to alter the products formed in the plant, and therefore to hurt its growth.   The other effect is still worse; it directly destroys the assimilating powers of the plant.   The plant assimilates by means of certain little granules in the leaf.   If you destroy the granules, you destroy absolutely the power the plant has to absorb its food from the earth.   Carbon monoxide does distinctly do this.   Carbon dioxide is essential to plant growth.   The carbon monoxide takes the place of it when it is exposed to it, and that is fatal to the ·plant."

Other witnesses testified to the odor of illuminating gas being discovered at sundry times in and upon the premises of the plaintiff, and in the vicinity of his premises.   Considerable evidence indicated that there was a break in the defendant's main, near the house of one Bristol, some 40 rods distant from the residence of the plaintiff, and

that a sewer pipe, as well as a main of the defendant, extended from Bristol's house up to the immediate vicinity of the house of the plaintiff.

The verdict of the jury, in finding that the gas of the defendant caused the injury of which the plaintiff complains, does not rest upon mere surmise or conjecture; and we think the comments made in Evans v. Gas Co., supra, in respect to that verdict, are quite applicable to the verdict before us. It was said in that opinion, viz.:

"The two points for the jury to be convinced upon were, was natural gas carelessly suffered to escape from the gas main, and was it the procuring cause of the destruction of vitality and vegetation?"

We think the defendant at the trial enjoyed a more liberal rule than it was justly entitled to, as the trial judge submitted to the jury, upon the evidence that was offered, the question of whether the plaintiff was guilty of contributory negligence or not, and also the question of whether the defendant had received notice of the several occasions when the gas was alleged to have escaped, and also whether the plaintiff, as soon as he could, by any process, reasonably apprehend the presence of gas, notified the defendant thereof. There was evidence which warranted the jury in finding, which they doubtless did, all of these questions favorable to the plaintiff.

We are of the opinion that no error was committed by the trial judge in refusing to grant the defendant's motion for a nonsuit at the close of the plaintiff's case, and in denying the motion made by the defendant at the close of the whole case. Clearly, it was the duty of the defendant to exercise due care and diligence to keep its gas "constantly under control, and prevent it from escaping into dwelling houses or places of business." Emerson v. Gaslight Co., 3 Allen, 410; Kibele v. City of Philadelphia, 105 Pa. St. 41; Smith v. Gaslight Co., 129 Mass. 318; Pol. Torts (4th Eng. Ed.) c. 12. We find no occasion to review the finding of the jury that the plaintiff was not guilty of contributory negligence, as the action was for a wrong on the part of the defendant. Barton v. City of Syracuse, 36 N. Y. 54; Clifford v. Dam, 81 N. Y. 52; Mairs v. Association, 89 N. Y. 497; Donohue v. Railroad Co., 11 App. Div. 531, 42 N. Y. Supp. 808. Besides, we are fully persuaded that the evidence warranted the verdict in that regard.

Some criticism is made in respect to the right of the plaintiff to connect his premises with the sewer in 1892. We think his testimony sufficiently answers that criticism, where he says:

"I put in my sewer in 1892, in the summer, about July. I applied to Mr. Carson, the city clerk, for permission to put it in. I applied to Mr. Wadsworth, the mayor. I got a permit to dig in the street."

There does not seem to be any force in the criticism made by the defendant that he should have obtained further authority before making use of the sewer, inasmuch as the evidence warranted the jury in finding that he had a permit, and that the connection was properly made. The plaintiff had no occasion to apprehend the approach of illuminating gas in the sewer or outside of the sewer.

2. There was some conflict in the evidence in respect to the damages sustained by the plaintiff by reason of the destruction of his

flowers and properties in his greenhouse. It is difficult, from a perusal of the evidence given by the plaintiff as a witness, in connection with the evidence given by the defendant in regard to the losses sustained by the plaintiff, to determine with any great accuracy the actual damages sustained by the plaintiff. He was permitted to describe the plants and flowers and bushes which he had at different times in his greenhouse, and the effect of the presence of gas upon them, and the injuries which were sustained in consequence of the presence of gas. Some of his statements are somewhat shaken by his cross-examination, and are overcome to a considerable extent by the testimony given by the defendant. As we understand the evidence, we think the actual loss sustained by the plaintiff does not exceed the sum of $1,500, although the jury have rendered a verdict of $2,000. We have come to the conclusion to grant a new trial, unless the plaintiff shall stipulate to reduce the verdict to $1,500. Barrick v. Schifferdecker, 123 N. Y. 52, 25 N. E. 365; Dwight v. Railroad Co., 132 N. Y. 199, 30 N. E. 398; Hartshorn v. Chaddock, 135 N. Y. 123, 31 N. E. 997; Evans v. Gas Co., 148 N. Y. 116, 42 N. E. 513; Todd v. Gamble, 148 N. Y. 382, 42 N. E. 982.

Judgment and order reversed, and a new trial ordered, with costs to abide the event, unless the plaintiff shall stipulate to reduce the verdict and judgment to $1,500 damages, in which event the judgment and order, so modified, are affirmed, without costs to either party. All concur.