O. B. GOULD and Another v. WINONA GAS COMPANY.[1]

March 8, 1907.

Nos. 14,939—(75).

**Escape of Gas—Negligence.**

The liability of a gas company in damages to the owner of trees on a boulevard in front of his premises, caused by the escape of gas from mains on streets, is not determined by the doctrine of insurance of safety, but by principles of negligence applicable to authorized public works. Rylands v. Fletcher, L. R. 3 H. L. 330, distinguished.

**Quære.**

Quære: Whether the gas company could have been held responsible, without reference to negligence, in an action for trespass.

**Evidence.**

Where such damage was caused by a leak due to the action of frost in the winter, and the escape of gas was not discovered by the company until June of the same year, the maxim "res ipsa loquitur" applies. The failure of the trial court to give plaintiff the benefit of the maxim was reversible error.

[1] Reported in 111 N. W. 254.

**Degree of Care Requisite.**

    The care to be exercised by the gas company is not ordinary care, as distinguished from extraordinary care, but due care, or care commensurate with the danger.

**Quære.**

    Quære: Whether the defense of contributory negligence of the plaintiffs in not notifying the defendant of the escape of gas can be asserted in a case where defendant had no permission to go upon plaintiff's premises.

Action in the district court for Winona county to recover $500 for the destruction of shade trees by the escape of gas from the mains of defendant. The case was tried before Snow, J., and a jury, which rendered a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Wm. Codman* and *Webber & Lees,* for appellants.
*Brown, Abbott & Somsen,* for respondent.

JAGGARD, J.

This was an action to recover damages for the destruction of trees growing on the boulevard in front of plaintiffs' premises, caused by the escape of gas from defendant's mains laid in a public street. No motion for a directed verdict was made by the defendant. The jury returned this special verdict: "Was the death of plaintiffs' trees proximately caused by the negligence of the defendant gas company? Answer—No." From the order of court denying plaintiffs' motion for a new trial, this appeal was taken.

The assignments of error present as the first question here to be determined whether this case is governed by the rules of negligence, or by the principle, laid down in Rylands v. Fletcher, L. R. 3 H. L. 330, that a landowner must keep in that which for purposes other than those which are natural he has brought on his own land—in that case water in a reservoir—at his peril.

(1) This doctrine of responsibility for damage to which the exercise of due care is no defense has been applied in this state. The original and leading case is Cahill v. Eastman, 18 Minn. 292 (324), 10 Am. 184. Knapheide v. Eastman, 20 Minn. 432 (478); Hannem v. Pence 40 Minn. 127, 41 N. W. 657, 12 Am. St. 717, and Kray v. Muggli

77 Minn. 231, 79 N. W. 964, 1026, 1064, 45 L. R. A. 218, are in accord. In Berger v. Minneapolis Gaslight Co., 60 Minn. 296, 62 N. W. 336, it was held that a defendant, who for his own use and profit stored upon his own land large quantities of crude petroleum, which escaped therefrom, went upon the premises of plaintiff, and created a nuisance thereon, was liable in damages without reference to negligence. The opinion, however, expressly limited the operation of the rule to those things only the natural tendency of which is to become a nuisance or to do mischief if they escape. The entire subject has recently been considered by this court and Cahill v. Eastman, as thus limited, was followed. Wiltse v. City of Red Wing, 99 Minn. 255, 109 N. W. 114. On this state of the law the plaintiff insists that defendant is liable for damages without proof of negligence.

(2) With respect to the responsibility for damage caused by the escape of gas, however, every one of the many American authorities which have been called to our attention, or which we have been able to find after a protracted search, determines the common-law liability in such a case upon the principles of negligence applicable to the custody of a dangerous instrumentality. 1 Thompson, Neg. 719. In Gas v. Andrews, 50 Oh. St. 695, 35 N. E. 1059, 29 L. R. A. 337, the absolute duty of keeping natural gas under control was imposed by a specific statute. The same conclusion has been reached indifferently in those jurisdictions in which the doctrine of insurance of safety has been accepted, as in Massachusetts (Holly v. Boston, 8 Gray, 123, 69 Am. Dec. 233; Flint v. Gloucester, 9 Allen, 552; Bartlett v. Boston, 117 Mass. 533, 19 Am. 421; Hutchinson v. Boston, 122 Mass. 219; Carmody v. Boston, 162 Mass. 539, 39 N. E. 184; Ferguson v. Boston, 170 Mass. 182, 49 N. E. 115), and in those in which it has been rejected, as in New York (Lee v. Troy, 98 N. Y. 115; Donahue v. Keystone, 181 N. Y. 313, 73 N. E. 1108, 70 L. R. A. 761, 106 Am. St. 549, which involved the destruction of trees; Schmeer v. Gas, 147 N. Y. 529, 540, 42 N. E. 202, 30 L. R. A. 653). The relevant decisions will be found gathered in 14 Am. & Eng. Enc. (2d Ed.) 936, in the elaborate notes to Gas v. Andrews, 29 L. R. A. 337, in chapter 29, Thornton Oil & Gas, in chapter 17, Donahue, Pet. & Gas, and in 5 Current Law, 1586. It is true that in most of these cases it has been assumed that the liability rested on negligence only, as in Han-

sen v. St. Paul Gaslight Co., 82 Minn. 84, 84 N. W. 727, 88 Minn. 86, 92 N. W. 510; but the universal trend of opinion is none the less clear nor significant.

The law of negligence has also been applied to similar cases of damage caused by electricity (Denver v. Lawrence, 31 Colo. 301, 73 Pac. 39; Am. Dig. 1903A, col. 1532; 18 Cent. Dig. cols. 603, 604) alike where the rule in Rylands v. Fletcher is in force (Illingsworth v. Boston, 161 Mass. 583, 37 N. E. 778, 25 L. R. A. 552) and where it is not (City v. Watervliet, 76 Hun, 136, 27 N. Y. Supp. 848; Ennis v. Gray, 87 Hun, 355, 34 N. Y. Supp. 379), and to similar cases of damage caused by water mains, also alike where that rule is recognized (Blyth v. Birmingham, 25 L. J. Exch. 212) and where it is not (Terry v. Mayor, 8 Bosw. [N. Y.] 504). Nor have we been able to find any English case sustaining absolute liability. On the contrary, in Price v. South Metropolitan, 65 L. J. Q. B. Div. 126, an action seeking recovery of damages from an explosion of gas escaped from pipes, Lord Russell, C. J., said: "It is clear, too, that where a gas company, * * * having statutory authority to lay pipes, does so in exercise of its statutory powers, the 'wild beast' theory referred to in the well-known case of Fletcher v. Rylands [35 L. J. Exch. 154] is inapplicable."

(3) One of the considerations justifying the conclusion of the inapplicability of Rylands v. Fletcher to cases of escape of gas, namely, that pipes have carried gas away from the company's own land, is not entitled to much weight, inasmuch as the ground in which they have been laid is the company's property for that purpose. Nor is there great cogency in the second of such considerations, namely, that the gas company is a public service corporation engaged in furnishing an essential of modern city life, which it may be compelled to do on terms (Peckham, J., in Schmeer v. Gas, 147 N. Y. 529, 540, 42 N. E. 202, 30 L. R. A. 653), inasmuch as this is a voluntary undertaking for profit, and is no more than is in effect done by ordinary private incorporated or unincorporated industries, and inasmuch as the conditions imposed have an equivalent in the special privilege conferred.

A sounder, although allied, basis for the distinction, is to be found in express public authority. See Lord Russell, in Price v. South

Metropolitan, supra. A person who brings on his own premises a dangerous substance or element may "be held responsible for results which naturally arise out of the dangerous character of the thing itself, for he may be said to assume the risk of all consequences, just as a man assumes the risk of all accidents which may happen from keeping upon his premises animals which are feræ naturæ, without regard to any question of negligence in their keeping. On the other hand, it may be said without fear of contradiction that no man can be held responsible for doing that which he is expressly authorized by law to do unless he is guilty of some negligence or misconduct." Thayer, P. J., in Strawbridge v. City, 13 Phila. 173, 36 Leg. Int. 276.

This principle has, indeed, been carried so far as to regard the resulting damage as merely incidental to an authorized act. The celebrated case of Madras v. Zemindar, L. R. 1 Ind. App. 364, held that the zemindar, upon whom devolved the duty of maintaining water tanks as a part of the national system of irrigation, was not responsible for damages occasioned by the overflow of water because of justification by custom and official duty. After calling attention to the fact that the original doctrine of Rylands v. Fletcher was based on an accumulation of water in the non-natural user of the close, the court said (page 373): "Laws older than the Mahomedan domination, as old as authentic history, have recognized the primary necessity of such tanks, and declared the destruction of them the greatest of crimes; and for the obvious reason that they are the wellspring of a people's life, surely the storing up of water is no mere artificial user of Indian land, but the only possible mode of natural user. * * * The rule upon which the relative rights of men are to be determined is no mere unbending formula. The existence of men in society requires that each should sacrifice a portion of his abstract rights to permit of the coexistence of others. * * * In this as in many other cases the formal rule of law is to be drawn from the matter of which it is the regulating principle. In Tipping v. St. Helen's Smelting Company, [L. R. 1 Ch. 66, 11 H. L. 642,] the necessities of commerce are admitted as a ground for compelling persons in a populous town to put up with poisonous vapors, although the superior sanctity of property, always in England better considered than life or limb, is duly asserted at page 651. In

Cavey v. Ledbitter, [13 C. B. (N. S.) 476,] the Chief Justice points out the influence of time, place, and circumstances upon the question of nuisance.  In Bamford v. Turnley, [3 B. & S. 66,] all the judges recognize the doctrine.  At the close of the judgment in the Exchequer Chamber in Fletcher v. Rylands, [L. R. 1 Ex. 265,] the necessities of traffic upon the highway and of trade and commerce are recognized as grounds for the more limited duty imposed upon carriers and people throwing down packages from wharves."  At page 384:  "But the principle that a man, in exercising a right which belongs to him, may be liable, without negligence, for injury done to another person, has been held inapplicable to rights conferred by statute.  This distinction was acted upon in Vaughan v. Taff Vale Railway Company, [5 H. & M. 679,] where it was held by the Exchequer Chamber that a railway company were not responsible for damage from fire kindled by sparks from their locomotive engine, in the absence of negligence, because they were authorized to use locomotive engines by statute.  *  *  *  On the same principle it was decided that a waterworks company, laying down pipes by a statutory power, was not liable for damages occasioned by water escaping in consequence of a fire plug being forced out of its place by a frost of unusual severity.  Blyth v. Birmingham Waterworks Company, [25 L. J. Ex. 212.] On the other hand, in Jones v. Festiniog Railway Company, [L. R. 3 Q. B. 733,] it is held that a railway company, which had not express statutable power to use locomotive engines, was liable for damages done by fire proceeding from them, though negligence on the part of the company was negatived."

So in National v. Baker [1893] 2 Ch. Div. 186, considering, inter alia, Cumberland Telephone & Telegraph Co. v. United Electric Ry. Co. (C. C.) 42 Fed. 273, 12 L. R. A. 544, the doctrine of Rylands v. Fletcher was held to apply to electricity generated upon a man's land. But, said the court, "the defendants were expressly authorized to use electric power, and the legislature must be taken to have contemplated it, and to have condoned by anticipation any mischief arising from the reasonable use of such power."  Indeed, to the extent that the escape of electricity (from the rails of an electric road) is a natural incident of the legalized act, an electric company has been held not to be liable for injuries done to trade apparatus (the delicate devices

of a submarine cable company) employed in the non-natural use of the premises of an adjoining proprietor. Eastern v. Cape Town [1902] App. Cas. 381.

It is evident that the ultimate justification of the inapplicability of the rule of insurance against harm to cases of damage by gas escaping from mains lies in the controlling regard of the common law, not for doctrine, but for common sense. Its paramount object is to work out substantial, not metaphysical, justice. Its just claim to distinction is to be found, not in the logical consistency of its applied theories, but in the practical wisdom with which it has adapted its rules to varying subject-matter and conditions. Finally, it is to be observed that the severity of the rule of absolute liability in Rylands v. Fletcher is opposed to the unmistakable tendency of the law in all its allied branches to rest responsibility for damages upon legal culpability.

(4) The conclusion, thus justified by authorities and dictated by reasons valid as a whole, is that the recovery of damages to shade trees on premises of the owner of land, caused by the escape of gas from mains on a public street, is to be determined in accordance with principles of negligence, and not by the doctrine of insurance against harm.

(5) It may be that it would be more difficult to distinguish this case from the principle of the decisions on the responsibility in trespass for damages of the person using a dangerous instrumentality than from that of Berger v. Minneapolis Gaslight Co., supra. There is an obvious difference between cases where the escape of gas damages premises upon which the gas company has the owner's permission to introduce its pipes and product, and cases where it enters upon such premises despite the owner's will. Even in New York liability for escape of gas on the theory of trespass appears to have been recognized. Armbruster v. Auburn, 18 App. Div. 447, 46 N. Y. Supp. 158, and cases cited. So, although damages caused by an explosion are not recoverable in an action on the case without proof of negligence (Losee v. Buchanan, 51 N. Y. 476, 10 Am. 623. Cf. Marshall v. Welwood, 38 N. J. L. 339, 20 Am. Dec. 394), a person using explosives cannot cast dirt or stones upon the land of his neighbor, either by human agency or by force of gunpowder, without being

held responsible for damages, although no negligence be shown (Hay v. Cohoes, 2 N. Y. 159, 51 Am. Dec. 279). Indeed, in accordance with earlier decisions of that state, a late case holds that a pedestrian on a public highway, struck by a rock thrown out by a subcontractor blasting the New York subway excavation, may recover damages in trespass without reference to negligence. Turner v. Degnon-McLean Contracting Co., 99 App. Div. 135, 90 N. Y. Supp. 948. See, also, an excellent and timely article on Liability for Injuries Done by Blasting Without Proof of Negligence, by Mr. Henry P. Erdman, in 54 Am. Law Reg. 677, and 12 Am. & Eng. Enc. (2d Ed.) 508.

The question will not, however, be here decided. It is undoubtedly true that, under the reformed system of pleading, courts are empowered to grant the relief to which the facts in evidence entitle, despite the form of action adopted; but this case was not tried on the theory of trespass. In such case defendant's proof might have been different. The instructions asked by plaintiff are inconsistent with it, and the assignments of error do not fairly present the suggestion here made for the first time.

The second question presented by the assignments of error concerns the legal correctness of the charge of the court given on the theory that this was not a case for the application of "res ipsa loquitur." The main reason upon which that maxim is based, defendant insists, is absent here because the escape of gas cannot be assigned to want of care, but is attributable to a cause which could not have been prevented by any amount of care and for which the defendant was not responsible, namely, the facts that "winters here are cold, and this winter extremely so, and that such breaks are inevitable, where the gas pipe is subject to extreme cold. The inherent tendency of suitable iron gas pipes is to break or part because of frost. No precaution can prevent this."

(1) In other words, if the custodian of a terribly and subtly dangerous instrumentality, with full knowledge of certain peril, voluntarily puts out of sight and underground the immediate means of death and destruction in such a manner that the creation of the conditions of carnage and ruin is inevitable, and if harm, great or little, is in fact inflicted upon innocent persons or their property, then the law should

say that there can be no liability for damages; or, if the contention be construed most favorably to the defendant, that the mere happening of the accident, as a matter of law, permits no presumption of negligence not even of fact. The mere statement of the contention is its refutation. Gas pipes are not a chartered nuisance. The step downwards from the rule in Rylands v. Fletcher is too great to be taken in this jurisdiction. The very fact that the instrumentality doing damage is peculiarly and inherently dangerous is a common and proper consideration for the application of the maxim. Fay v. Davidson, 13 Minn. 491 (523) in which this court held that at common law and apart from the act of congress an explosion is prima facie evidence of negligence. Indeed, an explosion has been held to be within the rule of liability without reference to negligence. Wright v. Compton, 53 Ind. 337; FitzSimons v. Braun, 199 Ill. 390, 65 N. E. 249; City v. Murdock, 212 Ill. 9, 72 N. E. 46, 103 Am. St. 221; Bradford v. St. Marys, 60 Oh. St. 560, 54 N. E. 528, 45 L. R. A. 658, 71 Am. St. 740. It is without significance that an inconsistent conclusion was reached in Reiss v. New York, 128 N. Y. 103, 28 N. E. 24, to which we are cited. That case follows Losee v. Buchanan, 51 N. Y. 476, which, in rejecting Rylands v. Fletcher, differs from the rule in this state, and which is apparently not in harmony with the later cases in New York. Turner v. Degnon-McLean Contracting Co., supra. It also follows Cosulich v. Standard, 122 N. Y. 118, 25 N. E. 259, 19 Am. St. 475, an essential part of the reasoning of which has been thoroughly discredited, as will immediately appear.

(2) All the essentials to the application of the maxim are here present. It is obviously no longer, if it ever was, the law that never, except in contractual relations, is proof of the mere happening of an accident evidence of negligence on the part of the defendant. 2 Thompson, Neg. 1227, which announces that summary, was in large measure the basis of the rule denying the application of the maxim in Cosulich v. Standard, 122 N. Y. 118, at page 122, 25 N. E. 259, 19 Am. St. Rep. 475. This is so clearly opposed to the overwhelming weight of authority in general, and to the rule in this state in particular (Olson v. Great Northern Ry. Co., 68 Minn. 155, 161, 71 N. W. 5), that it would be idle to collate relevant authorities. Many such cases

will be found in Houston v. Brush, 66 Vt. 331, 29 Atl. 380, and in Labatt, M. & S., § 834, p. 2302, etc.

One of the essentials to the application of the maxim is clearly present: The agency was admittedly in the exclusive management of the defendant. Its condition was peculiarly within its knowledge, and within the possibility of its knowledge only. The other essential is also here: The result was such as in the ordinary course of things does not happen if those who have the management used proper care. See Scott v. London, 3 H. & C. 596. The record contains no evidence, nor will the court indulge in the violent presumption, that the escape of gas is usual, necessary, or inevitable, despite the exercise of due care. No necessity therefor exists 'in nature. There is no justification for the assumption that means of prevention of escape, as by digging the trenches deeper or otherwise, do not exist and are not reasonable and feasible. Nothing in the record concerning an unusually cold winter bears the faintest resemblance to an act of God. Reasonable care, it is elementary in such a matter, has reference to the known and varying severity of this climate. We agree with the trial court that leaks in gas pipes may and frequently do occur because of the action of frost. But to go further, and say that this is the ordinary course of their operation, in a legal sense, is to fly in the face of common experience. Electricity may, and as frequently does, escape from wires, despite insulation, with resulting damage. The maxim applies to such cases. Delahunt v. United (Pa.) 64 Atl. 515; Jones v. Union, 18 App. Div. 267, 46 N. Y. Supp. 321; Snyder v. Wheeling, 43 W. Va. 661, 28 S. E. 733, 39 L. R. A. 499, 64 Am. St. 922; Haynes v. Raleigh, 114 N. C. 203, 19 S. E. 344, 26 L. R. A. 810, 41 Am. St. 786; Uggla v. West End Ry. Co., 160 Mass. 351, 35 N. E. 1126, 39 Am. St. 481. It adds nothing in case of escape of either gas or electricity, that such occurrences are despite no fault of the owning company, other than such as is to be inferred from the failure to protect against a familiar and usual peril from natural agencies.

(3) The decisions to which defendant refers us do not change this view. In Ryder v. Kinsey, 62 Minn. 85, 64 N. W. 94, 34 L. R. A. 557, 54 Am. St. 623, this court held in substance that the fall of a building raised a rebuttable presumption of its owner's negligence, but that proof of exculpating circumstances, establishing a cause for

that fall not tending to show the owner's negligence, shifted the onus to plaintiff to show that such cause might have been discovered or removed. In Reiss v. New York, 128 N. Y. 103, 28 N. E. 24, the necessary lack of the authority of which in this jurisdiction has already been referred to, it was held probable that the escape of the steam, doing damage, was caused by the act of a stranger tampering with the apparatus. Here the circumstances relied upon for exculpation do not necessarily operate, nor tend to disprove negligence. The proof of the depth at which the pipes were laid, in connection with defendant's contention as to the frequency of leaks caused by frost, might or might not be regarded as in itself tending to show negligence. Even the inspection claimed as an exoneration might or might not, also, be regarded as the fair basis of argument that it was negligent, although it might have been customary; for it is to be borne in mind that the break causing the leak occurred in the winter, and that the gas company did not discover it until the following June. In England this would probably in itself constitute negligence. See Mose v. Hastings, 4 F. & F. 324.

(4) The specific authorities holding that the maxim applies to cases of proved legal damages caused by the escape of gas, while not univocal or uniform in formulæ, are substantially in accord on principle. The statement of the rule in 2 Shearman & R. on Neg. (5th Ed.) p. 1197, § 693: "The bare fact, however, that gas escaped from defendant's pipe, is prima facie evidence of some neglect on its part, from which a jury is at liberty to draw the inference of want of due care in conducting the gas"—has received judicial sanction. Baudler v. People's, 108 Ill. App. 190. While all the cases cited in note 6 do not fully sustain the text to the letter, practically all justify its effect. It is a fair statement of the result of the Massachusetts cases which it cites (Smith v. Boston, 129 Mass. 318, and Carmody v. Boston, 162 Mass. 539), and of the later Pennsylvania authorities, to which it does not refer (Heh v. Consolidated, 201 Pa. St. 443, 50 Atl. 994, 88 Am. St. 819; Shirly v. Consumers' G. Co., 215 Pa. St. 399, 64 Atl. 541). Other commentators concur. Thornton, Oil & Gas, p. 702, § 612; Donahue, Pet. & Gas, p. 292, § 2. The same confusion as to the effect of the principle is in the general subject. See 21 Am. & Eng. Enc. (2d Ed.) 513 (3); and see end of note 4, p. 514. An especially

clear statement of the Massachusetts and Pennsylvania rule is that of Mr. Justice Mitchell in East End v. Pennsylvania Torpedo Co., 190 Pa. St. 350, 42 Atl. 707.

The assignments of error here present only the question of the propriety of the charge given, and not what that charge ought to have been. The court instructed the jury as in an ordinary case of negligence not governed by the maxim. It erroneously failed to give the plaintiff the express benefit of the principle. Waller v. Ross, supra, p. 7, 110 N. W. 252, 254. Moreover it charged: "The mere fact that gas escaped from the ground at the place in question raises no presumption that the defendant is guilty of negligence." This instruction, that as a matter of law no presumption of negligence arose, is clearly reversible error.

The third question presented by the assignments of error concerns the charge of the court as to the degree of care which defendant was required to exercise. The court charged repeatedly that only "ordinary care," "ordinary and not extraordinary," "ordinary care and no higher degree" of care, was the standard of the law. In view of a new trial, we call attention to the fact that the fallacy so often pointed out in the use of terms involving degrees of care as slight, ordinary, and great care, or in degrees of negligence as slight, ordinary, and gross negligence, does not inhere in these words, but in the ideas. It might exist quite as much in a charge that ordinary, as distinguished from slight or extraordinary, care, is all that is required. Many authorities exact that high and extraordinary care be exercised in cases like the one at bar; others, only ordinary care. The test in this state is due care, or care commensurate to the danger. In general terms, it is necessary that every reasonable precaution suggested by experience and the known danger of the escape of gas ought to be taken. Koelsch v. Philadelphia Co., 152 Pa. St. 355, 25 Atl. 522, 18 L. R. A. 759, 34 Am. St. 653; Consolidated v. Crocker, 82 Md. 113, 33 Atl. 423, 31 L. R. A. 785.

The fourth question raised by the assignments of error concerns the charge of the court as to the contributory negligence of the plaintiff, so far as it tended to increase or failed to stop the injury to his trees. The jury acquitted the defendant of negligence. It therefore did not reach the alleged error. In view of a new trial, however, and of the

argument of defendant on this point in this court, attention is called to the distinction between this and all the cases on which the defendant relies, except one, in which this distinction was not noted: It is one thing to seek recovery for damages caused by the escape of gas from pipes laid on the complainant's premises with his permission, and a different thing to seek recovery where the gas comes on the premises as a trespasser ab initio. The duties of the defendant, might well be held to be materially different in the two cases. In Baulder v. People's, 108 Ill. App. 188, 190, Ball, P. J., said: "It must not be forgotten that the plaintiff was on his own property. Therefore he was under no obligation to watch lest he might be injured by the unlawful act of the defendant in flooding his premises with an explosive gas. Dunham v. Daubelin, 41 Ill. App. 175." And see Armbruster v. Auburn, 18 App. Div. 447, 450, 46 N. Y. Supp. 158.

Order reversed, and new trial granted.