# CITY WATER POWER COMPANY v. CITY OF FERGUS FALLS.[1]

December 16, 1910.

Nos. 16,836—(121).

**Dam in natural watercourse — owner not an insurer of its safety.**

Action by a lower riparian owner for damages caused by the destruction of his milldam by the breaking of the dam of an upper owner. *Held:*

1. The erection and maintenance of a dam across a natural watercourse for the purpose of utilizing a water power is not a nuisance, nor is the owner thereof an insurer of its safety, but he is bound to exercise in the premises a degree of care proportionate to the injuries likely to result to others if it proves insufficient. The dam must be sufficient to resist, not merely ordinary freshets, but such extraordinary floods as may reasonably be anticipated. Wiltse v. City of Red Wing, 99 Minn. 255, distinguished.

2. The maxim res ipsa loquitur applies to the facts alleged in the complaint, but it is a rule of evidence, not of pleading, and it cannot supply an allegation of an essential ultimate fact.

Action in the district court for Otter Tail county to recover $6,158.80 damages sustained on account of the giving way of a certain dam, whereby plaintiff's dam, located down stream, was partially washed away and destroyed. The substance of the complaint is stated in the opinion. From an order, Taylor, J., overruling defendant's demurrer to the complaint, it appealed. Reversed and remanded, with leave to plaintiff to apply to the trial court to amend the complaint.

*N. F. Field,* for appellant.

*J. W. Mason,* for respondent.

START, C. J.

Appeal by the defendant from an order of the district court of the county of Otter Tail overruling its general demurrer to the complaint. The here material facts alleged in the complaint, briefly

[1]Reported in 128 N. W. 817.

stated, are these: The defendant is a municipal corporation with power to furnish light for all municipal purposes, and to supply light to the inhabitants of the city for profit. In the execution of this power, and for its profit it built and maintained upon its own land and across the Red river a dam for the purpose of creating the necessary water power. This dam was located up the river one and one-half miles above a dam which the plaintiff built and maintained on its own land and across the river. The water in the river could be raised by the defendant's dam to the height of thirty feet, and was so raised, whereby a great reservoir of water, a mile long and thirty rods wide, was created and confined within the banks of the river. The water so collected and confined by the dam in the reservoir did not naturally belong there, and its natural tendency was to do great damage and mischief if it escaped. On the twenty-fourth day of September, 1909, the dam of the defendant, in consequence of the great pressure of the water in the reservoir above it, suddenly and without previous warning gave way, and thereby all the water contained therein escaped, and in a great flood rushed down the river upon and over the dam of plaintiff, whereby a great portion of it was destroyed, to plaintiff's damage in the sum of $5,697.43.

The learned trial judge stated his reason for overruling the demurrer in these words: "Even if, as defendant claims, the rule of absolute liability established by Cahill v. Eastman, 18 Minn. 292 [324], Knapheide v. Eastman, 20 Minn. 432 [478], Berger v. Minneapolis Gaslight Co., 60 Minn. 296 [62 N. W. 336] and Wiltse v. City of Red Wing, 99 Minn. 255 [109 N. W. 114] does not apply, I think the complaint brings the case within the rule res ipsa loquitur, as established in Waller v. Ross, 100 Minn. 7 [110 N. W. 252, 12 L.R.A.(N.S.) 721, 117 Am. St. 661], and Gould v. Winona Gas Co., 100 Minn. 258 [111 N. W. 254], and the numerous cases cited in those decisions."

1. The first question presented by the record is whether the rule of liability without proof of negligence held in the cases cited by the trial court applies to the facts admitted by the demurrer.

The rule was applied in the case of Wiltse v. City of Red Wing, supra. The facts in that case were that the defendant city construct-

ed on the side of a bluff one hundred fifty feet above plaintiff's house a reservoir, and pumped into it water from the river, and stored therein eight hundred thousand gallons of water for use in connection with its system of waterworks. The reservoir gave way and the water was thrown upon the house, whereby it was destroyed. We held upon these facts, following the previous decisions of this court, that the city was liable for the resulting damages without proof of negligence on its part in the construction and maintenance of the reservoir.

The doctrine of Rylands v. Fletcher, L. R. 3 H. L. 330, was first adopted and applied by this court in the case of Cahill v. Eastman, 18 Minn. 292 (324), 10 Am. Rep. 184, and in the Wiltse case we refused, on the ground of stare decisis, to overrule the former decisions. While an examination of the judicial decisions of other jurisdictions seems to indicate that the rule of Rylands v. Fletcher has been rejected as unsound in the majority of the states, yet we are not prepared to overrule our own decisions on the question. Nevertheless we are of the opinion that the rule ought not to be extended to cases not clearly within its reason.

We have, then, the question whether the rule ought to be extended to the case of the construction and maintenance by riparian owners of dams across natural watercourses for the purpose of utilizing water powers, a matter of great and increasing importance to public as well as to private interests. Such a use of the water of rivers and lesser streams is not an unnatural or unusual use, but the contrary. Nor does such use involve the bringing upon the owner's premises that which does not naturally belong there, nor the creation and maintenance of a nuisance, the existence of which fixes liability without proof of actual negligence. The legislature as early as 1857 (P. S. 1849–1858, c. 129) recognized the public benefit to result from a development of the water powers of the state by enacting a statute "to encourage the erection of milldams and mills" by authorizing their construction and giving the owners of water powers the right to exercise the power of eminent domain to secure the necessary land for flowage. This statute is still in force. R. L. 1905, c. 42. The constitutionality of the statute was sustained in

the case of Miller v. Troost, 14 Minn. 282 (365). In the case at bar both the plaintiff and defendant had a right as riparian owners to build their respective dams across the stream. Kretzschmar v. Meehan, 74 Minn. 211, 77 N. W. 41. In so doing each exercised a lawful right, the exercise of which was a substantial public benefit.

On principle it is clear that the rule of absolute liability ought not to be extended to milldams lawfully constructed and maintained without any negligence in fact. Such is the rule in other jurisdictions, notably in Massachusetts, although the rule of Rylands v. Fletcher is there accepted. Shipley v. Fifty Associates, 106 Mass. 194, 8 Am. Rep. 318; Wilson v. City of New Bedford, 108 Mass. 261, 11 Am. Rep. 352; Mears v. Dole, 135 Mass. 508. In these cases the rule of Rylands v. Fletcher was recognized and applied, but in the cases of Inhabitants of Shrewsbury v. Smith, 12 Cush. (Mass.) 177, and Gray v. Harris, 107 Mass. 492, 9 Am. Rep. 61, which were milldam cases, it was held that negligence in fact was the test of liability of an owner of a milldam for damages caused by the breaking of his dam. These cases, however, impose upon the owner of the dam a high degree of care in these words:

"It must be in proportion to the extent of the injury which will be likely to third persons provided it should prove insufficient. And it is not enough that the dam be sufficient to resist ordinary floods; for, if the stream is occasionally subject to great freshets, those must likewise be guarded against, and the measure of care required in such cases must be that which a discreet person would use if the whole were his own. * * * The dam should be sufficient to resist, not merely ordinary freshets, but such extraordinary floods as may be reasonably anticipated."

This court in the case of Gould v. Winona Gas Co., 100 Minn. 258, 111 N. W. 254, 10 L.R.A.(N.S.) 889, declined to extend the rule of absolute liability to gas collected in the mains of the defendant which escaped, whereby plaintiff's premises were damaged. We have been unable to find any case where the rule of absolute liability has been extended to milldams constructed in natural watercourses. This suggests the distinction between the Wiltse case and the one at bar. In the former case the conditions were wholly artificial. The

water was brought by artificial means upon the defendant's premises, where it did not naturally belong, and stored in an artificial reservoir upon the side of a high bluff, a menace to the safety of property below it lawfully. These are conditions not strictly analogous to those in the case at bar, where the waters of a natural watercourse were impounded within its banks in the usual and natural way for a public as well as a private purpose. See, in this connection, 3 Farnham, Waters & Water Rights, §§ 875, 982.

We accordingly hold that the erection and maintenance of a dam in a natural watercourse by a riparian owner for the purpose of utilizing a water power is not a nuisance, and that the owner thereof is not an insurer of its safety, but he is bound to exercise, in its construction and maintenance, a degree of care proportionate to the injuries likely to result to others if it proves insufficient.

2. This brings us to the question whether the maxim res ipsa loquitur applies to the facts alleged in the complaint. We are of the opinion that it does. The dam, its construction, and its maintenance were within the exclusive possession and control of the defendant or its agents. Dams constructed and maintained with the care required by law do not in the ordinary course of things break by the pressure of the water held back by them. The very purpose of constructing them is to impound the water of the stream. Waller v. Ross, 100 Minn. 7, 110 N. W. 252, 12 L.R.A.(N.S.) 721, 117 Am. St. 661; Gould v. Winona Gas Co., supra. The maxim, however, is a rule of evidence, not of pleading, and ultimate facts, not evidentiary ones, should be pleaded. On the other hand, it is true that proof of the fact alleged in the complaint in this case would establish a prima facie case in favor of the plaintiff, for the inference of facts from the facts pleaded would be that the defendant failed to use due care in the premises, hence it was negligent. It would be, from the very nature of this case, a great hardship, if not an impossibility, for the plaintiff to affirmatively allege and prove the particular negligence in the construction and maintenance of the. dam; but, on the other hand, the defendant knows presumably just how it was constructed and maintained. In any event, a general allegation of negligence in such respects would be sufficient. Olson

v. St. Paul, M. & M. Ry. Co., 34 Minn. 477, 26 N. W. 605; Rogers v. Truesdale, 57 Minn. 126, 58 N. W. 688.

We have reached the conclusion that the complaint should have alleged in general terms, at least, the ultimate fact of the negligence of the defendant in the premises, for the inference of negligence from the evidentiary facts pleaded is not a presumption of law, but a rebuttable inference of fact. It is only where the evidentiary facts pleaded are such that the conclusion of the ultimate fact necessary to sustain the action inevitably follows that such a pleading can be sustained. Zimmerman v. Morrow, 28 Minn. 367, 10 N. W. 139.

Order reversed and cause remanded, with leave to the plaintiff to apply to the trial court to amend the complaint.