## GEORGE WINANS v. NORTHERN STATES POWER COMPANY.[1]

January 18, 1924.

No. 23,728.

**Waiver of assignment of error.**

1. A specification of error in the notice of a motion for judgment or a new trial is waived if not renewed on appeal, unless it involved jurisdiction over the subject matter of the litigation.

**Gates in a dam—inference of negligence.**

2. The gates in a dam are a structural part thereof. The circumstances under which they gave way, as stated in the opinion, warranted the jury in drawing the same inference as if a portion of the dam itself had given way.

**Res ipsa loquitur.**

3. The doctrine expressed by the phrase res ipsa loquitor is applicable where a steamboat, moored by the owner above a dam across the Mississippi river, is wrecked as a consequence of the giving way of gates in the dam.

**Rights of public to use navigable river.**

4. The right of the public to use a navigable river, includes the right of moorage and extends to all parts of the stream within the limits defined by ordinary high water mark.

**Question for jury.**

5. Whether the breaking of an ice jam was the sole proximate cause of the wrecking of a steamboat moored near a dam was a jury question.

**Assignment of claim for damages.**

6. The evidence was sufficient to show authority in the general manager of a corporation to transfer a cause of action for an injury to the property which he sold to respondent.

[1]Reported in 196 N. W. 811.

**Verdict not excessive.**

    7.  The damages are not so excessive as to warrant this court in disturbing the verdict approved by the trial court.

Action in the district court for Ramsey county to recover $12,750. The case was tried before Hanft, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony denied its motion for a directed verdict, and a jury which returned a verdict for $4,600. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Denegre, McDermott, Stearns & Weeks,* for appellant.

*Herbert P. Keller, Bruce J. Broady* and *George G. Chapin,* for respondent.


LEES, C.

Respondent sued to recover damages for the destruction of the steamboat Samson, and had a verdict for $4,600. A motion in the alternative for judgment or a new trial was denied and the case is here on appeal from the order.

Several years prior to 1919, appellant's predecessors in interest constructed a dam across the Mississippi river near Coon creek in Anoka county and built a powerhouse there to make use of the water power. The height of the dam was 17½ feet. Under ordinary conditions the water level in the basin behind the dam was maintained at 838.3 feet above sea level. The dam was approximately 1,000 feet long and was equipped with 28 gates by which the water was kept as nearly as possible at the level mentioned. When raised, each gate permitted the water to run through at the rate of 2,500 cubic feet a second; 3,800 feet above the dam the river narrows and flows past Lookout Point. A few days prior to March 24, 1920, an ice jam formed at the Point. Appellant's principal witness testified that the jam was about 10 feet high and that it raised the water behind it about 8 feet. In the evening of March 24 the jam broke and the water surged into the basin, carrying the broken ice with it and raising the level of the water

about 3 feet. The gates were raised as fast as possible to let the surplus water escape, but the pressure was so great that 8 were torn out and 2 were damaged before they could be raised. As a consequence the water could not be controlled. It continued to flow out of the basin until it was drained to a level no higher than the top of the dam under the gates.

In September, 1919, the Samson was laid up for the winter a short distance above the dam. It was securely moored to the shore with wire cables. Respondent introduced evidence tending to show that when the jam broke and the water in the basin rose, the boat rose with it and was carried away from its original position; that it was pushed forward 12 or 15 feet and the stern swung over a submerged pile of concrete and, when the water escaped, the bow of the boat rested on the bank and the stern on the pile of concrete with no water to support the middle of the hull, which broke in two under the weight of the machinery. This was disputed by appellant, who introduced evidence tending to show that the boat was wrecked early in October, 1919, by a gale of wind which loosened the cables by which it was moored and blew it in on shore in such a position as to cause it to break in two. The evidence on this point was in sharp conflict. The truth of the matter was for the determination of the jury, and, for the purposes of this appeal, their verdict establishes the state of facts disclosed by the testimony of respondent's witnesses.

1. The jury were instructed that the mere fact that the gates went out would justify them in finding that there was negligence in the construction, maintenance or operation of the dam. They were told that the doctrine res ipsa loquitur was applicable under the circumstances shown by the evidence, and the doctrine was explained in substantial conformity with Sweeney v. Erving, 228 U. S. 233, 33 Sup. Ct. 416, 57 L. ed. 815, Ann. Cas. 1914D, 905, followed in Keithley v. Hettinger, 133 Minn. 36, 157 N. W. 897, Ann. Cas. 1918D, 376. No exception to the instruction was taken at the trial, but the notice of motion for a new trial raised the point that it was erroneous. The assignments of error make no reference to the instruction. Under our rules, an assignment of

error in a motion for a new trial is waived if not renewed on appeal, unless it goes to jurisdiction over the subject matter in litigation. Rule 8, subdivision 3; Martinson v. State Bank, 137 Minn. 476, 163 N. W. 503. The instruction is set out in appellant's brief with reference to the cases upon which the trial court relied in giving it. It is followed by this statement:

"With the law as stated by the court and as laid down in the cases above quoted, the appellant, of course, must be content, but appellant strongly urges that this doctrine does not and cannot apply to the facts in this case."

The cases in question are Wiltse v. City of Red Wing, 99 Minn. 255, 109 N. W. 114; City Water Power Co. v. City of Fergus Falls, 113 Minn. 33, 128 N. W. 817, 32 L. R. A. (N. S.) 59, Ann. Cas. 1912A, 108; and Barnard v. City of Fergus Falls, 115 Minn. 506, 132 N. W. 998. Appellant attempts to distinguish them from the case at bar on grounds: (1) Here, gates were torn out of a dam, but the dam itself did not break. In the Red Wing case a reservoir broke, and in the Fergus Falls cases the dam gave way; (2) in the Red Wing and Fergus Falls cases immovable property was damaged or destroyed; in the case at bar the property was movable and was put in a place of danger when its owners might well have placed it in a safer position. In view of the nature of the assignments of error, we consider these two points only.

The gates were as much a structural part of the dam as any other part of it. They were necessary to control the water level. If they gave way the effect was the same as if a section of the dam collapsed. In either case control of the water would be lost. Assuredly it would be impossible to distinguish this case from the Fergus Falls cases if a portion of the dam had given way, and we see no solid ground upon which to base a distinction between such a case and one where the gates are washed out instead of part of the masonry in the dam.

The character of the property damaged can make no difference in the application of the legal principles underlying the three cases cited. Whether the property be fixed or movable, if it is damaged

in consequence of the breaking of the dam or reservoir, the owner should be entitled to the benefit of the rule of evidence which was there applied. If it be true that the Samson was unnecessarily moored in a place of danger, the owners were negligent, and, if their negligence contributed to the wrecking of the boat, there could be no recovery. But that is a matter wholly foreign to the question of whether this is a case for the application of the rule of the Fergus Falls cases. As the matter is presented by the record, we hold that appellant is not in a position to predicate reversible error upon the giving of the instruction in question.

2. There was evidence showing that the Mississippi & Rum River Boom Company, the original owner of the Samson, consented to the construction of the dam. There was evidence that appellant's permission to moor the boat where it was wrecked was asked and given, and there was evidence to the contrary. It is contended that under these circumstances actionable negligence was not shown because the boat was left where it was at the owner's risk, the appellant owing no duty of any kind to the boom company or its successor. The contention cannot be sustained.

The water in the basin was part of the river. The dam caused the stream to expand, but did not change its navigable character. The rights of the public in a navigable river extend to all parts of the stream, or, as sometimes said, to the ordinary high water mark. When the volume of the stream is swollen, its surface remains the surface of the highway which the public has a right to use. 1 Farnham, Waters, § 27; Diana Shooting Club v. Husting, 156 Wis. 261, 145 N. W. 816, Ann. Cas. 1915C, 1148; State v. Columbia Water Power Co. 82 S. C. 181, 63 S. E. 884, 22 L. R. A. (N. S.) 435, 129 Am. St. 876, 17 Ann. Cas. 343; Fulmer v. Williams, 122 Pa. St. 191, 15 Atl. 726, 1 L. R. A. 603, 9 Am. St. 74. The right of moorage is included in the right of navigation. 1 Farnham, Waters, § 32a. Although the owners of the boat could not fasten the shore ends of the cables to posts on appellant's land without its permission, they could leave the boat where it was moored whether appellant consented or not. The water upon which

it rested when the river froze over was public water. Its level was controlled by the dam. It was the duty of appellant in operating and maintaining the dam to exercise a degree of care commensurate to the danger likely to result if it lost control of the water impounded. Kray v. Muggli, 77 Minn. 231-238, 79 N. W. 964, 1026, 1064, 45 L. R. A. 218; City Water Power Co. v. City of Fergus Falls, supra; 3 Farnham, Waters, § 875. What happened was not so unusual that appellant could not have anticipated it. Its superintendent testified that the ice had jammed every year since the dam was built and that with one exception the gates had gone out each year since 1913. Of course appellant was not an insurer of the safety of the boat and the jury were properly instructed to that effect.

3. It is urged that the formation and breaking of the ice jam was the sole proximate cause of the injury, if in fact the Samson was not wrecked prior to March 24, but the evidence made that a question for the jury. Doucette v. Little Falls Imp. & Nav. Co. 71 Minn. 206, 73 N. W. 847. The question was submitted to the jury in a careful and comprehensive charge. The verdict received the approval of the trial court and in our opinion it is fairly supported by the evidence.

4. On November 10, 1919, the Mississippi & Rum River Boom Company sold the Samson to the Mississippi Lumber Company, and on June 8, 1920, that company sold the boat to respondent. A written instrument transferring the title was executed by R. H. Chute, as general manager of the company. It contained these words:

"It is agreed that said George Winans shall have the right to repair or wreck and remove the said steamer Samson, or exercise any other right now within the province of the said Mississippi Lumber Company."

On June 14, 1921, the lumber company gave respondent a formal bill of sale with an assignment of any claim for damages it might have against appellant. The instrument recited that it was made to carry out more fully what was intended when the first instru-

ment was executed. Mr. Chute's authority to execute the second bill of sale is questioned. We find sufficient evidence in the record to establish his authority. The company was going out of business and converting its property into money. Mr. Chute was authorized by the board of directors to dispose of the company's assets. He negotiated the sale to respondent. The negotiations began in the fall of 1919. The price asked was $3,500. Respondent requested that the board of directors be consulted to ascertain whether they would not make a better price. They authorized Mr. Chute to reduce the price to $2,000. This was shortly before the first bill of sale was given. Mr. Weyerhauser, who was president of the company in 1919 and 1920, testified that to his personal knowledge Mr. Chute had authority to execute the second bill of sale, and his authority to execute the first is not questioned. The language of the excerpt set out above was probably broad enough to transfer the lumber company's cause of action against appellant. There appears to have been some doubt on that point. The purpose of the second bill of sale was to clear up the doubt. We hold that the cause of action passed to respondent before he sued.

5. The last point raised is that the verdict is excessive. There is no specific assignment of error to that effect, but the point was presented in the court below and is discussed in the briefs of both parties, and we will consider it although there is no proper assignment of error. Moehlenbrock v. Parke, Davis & Co. 141 Minn. 154, 169 N. W. 541.

The boat was built to be used in connection with the logging and lumbering operations of the boom company. It was equipped with a pile driver. It was not fitted up to carry passengers or freight. There was no lock in the dam. There were no other steamboats on the Mississippi river above the dam. Manifestly the boat had little value, unless it could be transported to St. Paul and placed in the river there. There was evidence that this could be done by taking the boat apart and rebuilding it at a total expense of about $6,000 and that then it would be worth $15,000. This evidence came from steamboat men of many years experience, in-

cluding W. G. Peters of Wabasha, Minnesota, a well known builder of steamboats who has also bought and sold them for years. Steamboats are property of uncertain value. The verdict seems large to us, but it was not so large as to induce the trial court to interfere, and we must decline to disturb it since it is supported by some evidence to which the jury might properly give credence.

Order affirmed.