Dunham Towing and Wrecking Co. v. Daudelin.

## Dunham Towing & Wrecking Company
### v.
## Emily Daudelin, Administratrix.

*Personal Injuries — Negligence — Contributory Negligence — Towing Company.*

1. A person upon his own premises is not required to keep watch lest he may be injured by the acts of those who trespass thereon.

2. The right of passage up and down a navigable river extends only to the dock line; any interference with property upon such docks by the bows, masts or attachments of any vessel, would be a trespass.

3. The law does not require a person, suddenly placed in a position of great peril, to exercise that coolness of judgment which, under other circumstances, he would exercise, or which prudent men ordinarily exercise, but takes note of the fact that few persons, when suddenly called upon to act hastily, do not act less wisely than they would have done had they been afforded time for deliberation.

4. A wrongdoer, who placed a person injured in a position of extreme peril, can not be heard to urge, in an action brought to recover for such injury, that the plaintiff in the excitement of the moment failed to do that which was best for his own safety.

5. In an action brought by an administratrix to recover for the death of her intestate, the same having occurred, as alleged, through the negligence of a towing and wrecking company, the jibboom of a vessel being towed by one of its tugs, out of a slip, striking a scaffold some distance from the dock line, upon which deceased was at work, precipitating him therefrom, this court declines, in view of the evidence, to interfere with the judgment for the plaintiff.

[Opinion filed July 23, 1891.]

Appeal from the Circuit Court of Cook County; the Hon. Frank Baker, Judge, presiding.

In this case it appeared that leading into the south branch of the Chicago river, in the city of Chicago, is the Santa Fe slip, so-called. On the east side of this slip and extending from a point near the river bank is the Santa Fe elevator. On the west side of the elevator, next to the slip, are nine chutes about thirty feet high, by which grain vessels are unloaded. On the 28th day of May, 1889, Joseph Daudelin, the deceased, and his brother Felix, were at work repairing the cast-iron hoods that cover the upper ends of these chutes. At the time of the accident complained of they had been there at work for two days. While at work they stood upon a scaffold, which was about twenty-eight feet above the dock, below and close up to the hoods over the chutes. The scaffold was reached by a ladder from below, which ladder was not disturbed by the accident.

The appellant, a corporation engaged in the business of towing and wrecking, was the owner of the tug Robbie Dunham, the crew of which were with the tug on the 28th day of May, endeavoring to take the schooner Lookout, out of the slip. In so doing the tug gave the schooner a pull to give her headway, then dropped the line, and steamed back to make fast to the vessel alongside, so that the tug might have full control of her. The wind was blowing brisk from the east. When the tug dropped its line the stern of the Lookout began to swing toward the west and the bow toward the east and toward the elevator. As soon as possible the tug made fast by the bow line and was pushing to crowd the stern of the schooner in toward the elevator and to swing the bow away, when the guy rope leading from the end of the jibboom to the mast of the schooner, caught the corner of the scaffold, upon which deceased and his brother were standing, and at or about the same instant the jibboom struck the side of the elevator and the chute, turning the latter. Felix Daudelin stood on the north end of the scaffold, while deceased was upon the south end. They had seen the vessel approaching and deceased called out to Felix, "You hold on to your rope." Deceased at that time had hold of his rope. Deceased seems then to have let go of the rope supporting the platform, and

seized hold of the jibboom stay of the Lookout, this being done at the same time that the jibboom struck the elevator and spout, breaking the jibboom so that it fell away, whereby deceased pitched forward and fell to the dock below, being killed by the fall. Felix Daudelin remained upon the scaffold. The scaffold itself was broken or wrecked about the hole through which the spout passed, but the rest of it remained intact except that it was twisted. The tools upon it were not knocked off.

Suit was brought by the administratrix of Joseph Daudelin, in which suit the jury found that his death was caused by the negligence of the defendant. Judgment was entered upon the verdict and appellant brings this appeal.

Mr. W. W. Gurley, for appellant.

Messrs. Samuel B. Foster and Edward J. McArdle, for appellee.

Waterman, J. It is insisted by appellant that the judgment in this case can not be sustained, because the record, it is claimed, shows that deceased, both before and at the time of the accident, was not exercising ordinary diligence. It is said that the vessels and tugs were rightfully in the slip, and that deceased had notice that those vessels were liable to be towed out of the slip at any time; that deceased had notice of the uses to which this slip was put; that he had worked on the elevator from the time it was built; that, as one who is on a railroad track must take notice that trains are liable to run thereon, and that one who is in the street must observe that others have a right to use that thoroughfare, so he must have known that jibbooms may extend over the dock line; that the winds blow; that ships can not be managed with entire certainty, and so that it was gross negligence—certainly not ordinary care—for him to sit in this elevated position, twenty-eight feet above the dock, working with his back to the river regardless of what vessels and tugs therein were doing.

This insistance of appellant must be predicated upon the idea that in towing vessels out of the slip, appellant had a

right to do so in such a manner that their bowsprits would project over the dock, for it is clear that if appellant had no such right, then the deceased was not bound to take any note whatever of its proceedings. One who is sitting peacefully upon his own premises is not required to keep watch lest he may be injured by the acts of those who trespass thereon.

What is said as to the obligation of one walking on a railroad track or passing down a street is quite true, and would be applicable to this case if deceased had been working in or above any part of the river. But it appears, and appellant's counsel states in his brief, that the scaffold on which deceased was working was on the river side of the elevator, twelve feet over the dock line. It is only in and along the river that vessels have a right to move. They have no right to move, either the vessel itself, which is of course impossible, or any part thereof, the masts, spars or booms along and above the line of the dock. The right of passage up and down the river for vessels extends only to the dock line. Parties have a right to, and in many instances upon the Chicago river, actually do construct buildings upon the dock line, and any interference with or breaking into such buildings by the bows, masts or attachments of any vessels would be a trespass upon the rights of the persons owning the property so interfered with.

When the jibboom of the vessel projected over the dock line and struck the elevator, it was in a position where it had no right to be, and where appellant, in endeavoring to move this schooner out, had no right to place it. The deceased was not called upon, situated as he was twelve feet inside the dock line, to be upon the watch to see that some one did not trespass upon the ground of his employer by moving the jibboom of a schooner up and down and over the dock.

In the case of Johnson v. The Chicago & Pacific Elevator Company, 105 Ill. 462, a judgment for damages done by a tug running into an elevator situated on the bank of the Chicago river, was affirmed. It is true that in that suit no such point as is insisted upon here was made. It does not seem to have occurred to the defendants in that case, that vessels moving up

and down the Chicago river had a right to move their bowsprits along and above the dock as far as might be necessary; and no case has been cited, and we are aware of none in which it has been held that the right of vessels moving up and down a navigable stream for their convenient or necessary passage, extends to a use or occupation in any way of any portion of the territory beyond the line of the dock.

It is also urged that deceased, in seizing hold of the jibboom stay of the Lookout, and letting go of the rope which supported the platform, not only failed to exercise ordinary diligence, but was reckless. We do not think that the conduct of deceased in this regard can be properly characterized as either reckless or a failure to exercise ordinary diligence.

There is nothing in the record to show that deceased endeavored to do anything other than what he thought was necessary and best for his own safety. Granting that he made a mistake as to what, under the circumstances and in the emergency of the moment, it was best to do, his conduct then amounts, not to a failure to exercise ordinary care, but merely to a misjudgment as to what, in the endeavor to exercise the highest care, it was best to do.

The law not only does not require a person suddenly placed in a position of great peril to exercise that coolness of judgment which, under other circumstances, he would exercise, or which prudent men ordinarily exercise, but takes note of the fact that there are few persons who, when suddenly called upon to act hastily, do not act less wisely than they would have done had they been afforded time for deliberation. The question is not what, in after hours, when a calm review of all the circumstances can be taken, and when results are known which could not then with certainty be predicted, one can see it was best to do, but whether the party, under the circumstances of peril in which he was placed, did what, at the time, seemed to him the prudent thing to do. Moreover, it is to be borne in mind that in this case the circumstance of sudden peril in which the deceased was placed, and the necessity for hasty action upon his part, was entirely the result of the negligent conduct of appellant; and the wrong doer can hardly be heard

to urge that, having placed deceased in this position of extreme peril, he, in the surprise and excitement of the moment, failed to do that which was best for his own security.

The language of the Supreme Court of this State in the case of C. & A. R. R. Co. v. Becker, Adm'r, 76 Ill. 25–31, is applicable to this case :

"Where, for instance, the defendant has been guilty of negligence, but seeks to defend on the ground that the party injured might have avoided the injury by the exercise of ordinary care and caution, it sometimes happens in such cases that as a direct and immediate cause of the defendant's negligence the party injured was placed in a position of compulsion and sudden surprise, bereft of independent moral agency and opportunity of reflection. In such a case it would be against the common judgment of mankind to hold the injured party either morally or legally responsible for contributory negligence."

It is true that the wind was blowing briskly at the time of the accident, but it does not appear that this was unknown to the managers of the tug at the time they commenced their operations, and they were as much bound to take note of what the effect of the wind might be upon the movements of the vessel, as they were of what movement might be imparted to it by the operation of the tug alone.

This accident seems to have been the result of the negligent and wrongful conduct of appellant. We find nothing whatever to show that deceased was not exercising ordinary care and diligence, or that he in any way or wise failed, under the circumstances, to do what, in the peril of the moment, seemed to him best for his own safety.

The judgment of the court below will therefore be affirmed.

*Judgment affirmed.*