## Moritz Baudler v. People's Gas Light & Coke Co.

1. NEGLIGENCE—*Of Defendant Sufficient to Prevent Taking Case from Jury.*—Where a gas company knowingly allows gas to percolate from a leaky main into an adjoining house, where it causes an explosion, such action constitutes negligence sufficient to prevent the case being taken from the jury on that point.

2. TRESPASSERS—*Owner of Premises Not Compelled to Keep Watch to Avoid Injury from.*—A person upon his own property is under no obligation to watch lest he be injured by the unlawful act of a person who floods his premises with an explosive gas.

Trespass on the Case, for personal injuries. Error to the Superior Court of Cook County; the Hon. RUSSELL P. GOODWIN. Judge presiding. Heard in this court at the October term, 1902. Reversed and remanded. Opinion filed May 28, 1903.

Plaintiff in error brought suit against defendant in error for personal injuries alleged to have been sustained by him March 6, 1899, by reason of an explosion of gas in the basement of his house, situated at 344 Warsaw avenue in the city of Chicago.

The plaintiff, a German by birth and a carpenter by trade, had built his own house.    He piped it for water and sewage, but not for gas.    The defendant had a gas main in the street in front of this house, but no connecting pipe ran from this main to the house.    For at least two months prior to the explosion this main had been leaking in front of this house.    Several of the neighbors had noticed the smell of escaping gas.    One of them told the man who read the meter of defendant in her house of this defect, and

he replied, "It is going to be fixed in a short time." Another neighbor gives evidence to the same effect. For two months the gas escaping through this leak passed into the cellar and sleeping rooms of plaintiff's house. He smelled the odor, but says that he did not know what it was. March 6, 1899, after a very uncomfortable night, he and his wife went down cellar to find out where the smell came from. They located it near a post. The wife struck a match on that post, when an explosion occurred which moved a stove standing near by at least two feet, and changed the position of a carpenter's bench a foot or more. When the match was struck the plaintiff was standing from four to six feet distant from his wife. It seems that neither he nor his wife were thrown down by the shock. A witness, whose house is fifty feet distant from that of the plaintiff, was in his basement when the explosion occurred. He says: "Big oak plank fell down, you know. It was a big explosion all right." The plaintiff received no visible physical injury. Before the explosion he was a healthy man in mind and body. His family physician says: "He was in a good and sound condition up to that time so far as I know." Five other witnesses who had known plaintiff for years testify that before the accident he was not nervous, but was a healthy, sociable, kind man, interested in his work. Immediately thereafter his physical health became impaired and he lost his mental balance. He became suspicious of every one, even fearing that his wife and daughter would poison him; was irritable, wandered from home, and always complained of smelling gas. He was taken to a hospital, where he remained a short time. He went to Europe, saying that he would stay there all his life, but came back within six weeks. He is no longer a trustworthy or steady workman. His memory is defective. Dr. Kiernan, a consulting neurologist who examined the plaintiff, says:

"The only objective symptom I found was a heart murmur. The disorder prevented one valve of the heart from closing and acting properly. * * * If the heart was

Baudler v. People's Gas Light & Coke Co.

perfectly healthy before the explosion and this occurred afterward, I should be inclined to refer this murmur to the explosion. It indicates a weakness and irregularity of one of the valves of the heart; shows that the valve leaked. In the absence of any other cause in a healthy person I should ascribe it to the train of the explosion."

At the close of the plaintiff's case the trial court peremptorily instructed the jury to return a verdict for the defendant. From this ruling the present appeal was perfected.

JOHN F. WATERS and C. H. JOHNSON, attorneys for plaintiff in error.

SEARS, MEAGHER & WHITNEY, attorneys for defendant in error.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

When a case is taken from the jury by the trial judge and such action comes to us for examination on appeal, the question to be determined is, the whole record being considered, was there competent evidence, which, from its reasonable intendments and inferences, fairly tended to make out the plaintiff's case. It was not for the trial court, nor is it for us, to weigh the evidence. This is the well-settled rule of our courts. Any other rule leaves the right of trial by jury to the judgment and discretion of the presiding judge—a result repugnant to the spirit of our jurisprudence and forbidden by our state constitution, and the federal constitution.

First. The evidence clearly establishes the negligence of the defendant as charged in the declaration. For at least two months prior to the explosion gas had been escaping from the main. Those who passed by noticed it. The evidence also tends to prove that the defendant, through its employes, was twice notified of this leak long enough before the accident for its repair, had reasonable diligence been used in that regard. No disturbance of the street is shown after the time the main was laid therein; and hence it would seem that this leak occurred because of a faulty

construction. If so, a person injured thereby, without fault on his part, has a right of action against the defendant for all damages sustained by him therefrom, even though the defendant had no notice of the defect. This main was laid in the street with the great and exclusive privilege of supplying that part of the city with light for private gain. Through this main the defendant passed a gas known to it to be highly explosive. It was the duty of the defendant to keep that gas within the main and connecting pipes until it was delivered to the consumer. To this end the defendant was not only bound to lay down a main of good material, with skill and care, but it was also bound to inspect the main from time to time, and with such frequency that defects caused by use or accident might be repaired with reasonable. dispatch. The care required of the defendant is commensurate with the subtle and dangerous character of the material in its exclusive charge and control. Some of the authorities hold that the mere fact of the escape of gas from a place under control of the gas company is sufficient evidence to raise the presumption of negligence upon its part. Shearman and R. on Neg., Sec. 697; Smith v. Boston G. Co., 129 Mass. 318.

The evidence shows that the house of the plaintiff was not piped for gas; that he was not a customer of the defendant; and that the gas escaping from this defective main seeped into his cellar.

We are satisfied the evidence shows such negligence on the part of the defendant that the case should not have been taken from the jury upon this point.

Second. Was the plaintiff guilty of such negligence as warranted the trial court in directing a verdict for the defendant?

It must not be forgotten that the plaintiff was on his own property. Therefore he was under no obligation to watch lest he might be injured by the unlawful act of the defendant in flooding his premises with an explosive gas. Dunham Co. v. Daudelin, 41 Ill. App. 175.

The plaintiff says that while he detected the odor of the

escaping gas, he did not know what it was. Upon this appeal his statement in that regard must be taken as true. Not knowing the character of the odor, he was consequently ignorant of its dangerous qualities. He did not create the situation, and he was justified in attempting to solve the mystery which rendered his house uninhabitable. Under these circumstances, if in so doing he himself had lit the match which caused the explosion, he would not thereby be guilty of negligence which, as a matter of law, would deprive him of redress as against the wrongdoer. Believing this to be the law, we need not enter upon the vexed question as to how far he was responsible for the act of his wife in lighting the match. It is but a presumption that he knew she was going to light it, arising from the fact that they jointly went into the cellar to ascertain the cause of their discomfort. The evidence fails to show in direct terms that he knew what she was about to do. She was not necessarily his servant, nor is he conclusively presumed to be responsible for acts she might commit without his knowledge. Her contributory negligence can not be visited upon the plaintiff unless she was at the time his servant or agent.

If the occupant of a building, knowing that gas has been for some time escaping, sends his servant into the cellar with a light, whereby an explosion is produced, this will be evidence of contributory negligence sufficient to support a verdict for the defendant, but it will not warrant a judge in directing a non-suit. 1 Thompson on Neg., 110; Lanigan v. N. Y. G. L. Co., 71 N. Y. 29.

Third. Granting that the plaintiff was not guilty of contributory negligence, the trial judge, in directing a verdict for the defendant, must have assumed that the plaintiff received no physical injury, but that all his disabilities following the explosion and which date from that time, resulted purely and solely from fright.

The evidence goes no further than this—that the plaintiff received no external physical injury. He was struck by the expanding gases only. The force of such a concussion depends upon the strength of the explosion and the prox-

imity of the party to the point of explosion. That one may be seriously injured or even killed by such an accident without the appearance of external injury, we know, if we are permitted to rely upon our common observation and common knowledge. That gunners are sometimes disabled by atmospheric concussion resulting from the discharge of heavy artillery, we must believe from personal observation and from the unvarying statements of writers upon that subject. We also know that one may be injured internally without external indication; and that the mind and body may be impaired by internal lesion or weakness as well as by external violence. The disabilities of the plaintiff followed the explosion so immediately that the query at once arises: Did they not proceed from that cause? It seems to us to be far from true that all reasonable minds, viewing this evidence, would reach the conclusion that the "heart murmur" was caused solely by fright. If they would not so agree, then the action of the trial court in directing a verdict for the defendant was wrong.

But we are not left to supposition in this case. Dr. Kiernan, in speaking of the condition of the plaintiff, says:

" A sudden change has occurred, for which there is no adequate cause given, other than the explosion, which might be sufficient to produce the condition found. If the heart was perfectly healthy before the explosion and this occurred afterward, I should be inclined to refer this murmur to the explosion. It indicates a weakness and irregularity of one of the valves of the hearts; hows that the valve leaked. In the absence of any other cause in a healthy person I should ascribe it to the train of the explosion."

This testimony tends to prove that the physical impairment of the plaintiff was the direct effect of the explosion. Its credibility and weight should have been submitted to the jury, whose duty it is to pass upon all questions of fact.

We have examined the cases cited for the defendant, especially that of Braun v. Craven, 175 Ill. 401, and are of the opinion that, under the facts here presented, they are not controlling.

The judgment of the Superior Court is reversed and the cause is remanded.