Maton Bros., Inc., Appellee, v. Central Illinois Public Service Company, Appellant.

Gen. No. 8,558.

100

Opinion filed January 16, 1933.

JAMES VAUSE, JR., CARL D. KIGER, JOHN E. HOGAN and E. E. DOWELL, for appellant; JOSEPH E. GOODBAR on the brief; J. I. DILSAVER and JOHN W. COALE, of counsel.

CHURCH, HAFT, ROBERTSON, CROWE & SPENCE and CARL H. PREIHS, for appellee; JOHN W. FRIBLEY, of counsel.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

Appellee recovered a judgment against appellant in the circuit court of Shelby county for the sum of $89,320.16. A jury was waived and the cause submitted to the court for trial.

The declaration consists of an amended count of trespass *quare clausum fregit* and three counts in case. In the amended trespass count it is alleged in substance that plaintiff is now and has been since October 3, 1927, the owner of certain described real estate consisting of two tracts of land, one containing 4.7 acres and the other 12.86 acres which are contiguous and constitute a single parcel, and which have been continually used

by the plaintiff for the purpose of maintaining green-houses thereon for the production of roses for sale in the market and for the growing, grafting and propagation of rose plants; that in the proper management of the greenhouses on said property it became necessary for the plaintiff to construct and maintain drain tile for the purpose of conducting from said greenhouses excess water accumulating therein and the surface water falling upon the roof and grounds surrounding said greenhouses; that there was constructed a system of tile drains leading from the most southerly of the greenhouses upon the land in a northeasterly direction in the ground and under and across said grounds and greenhouses thence to an outlet beyond the property of the plaintiff; that at the time it acquired the property aforesaid there was situated thereon green-houses in which were many thousands of rose plants which were in an apparently healthy condition; that about the year 1917 the defendant became possessed of and was using and operating a gas plant including among other things gas mains through which it caused gas to be carried from that date until and after the 4th day of December, 1929; that on or about October 2, 1927, the defendant, with force and arms and without knowledge, consent or approval of the plaintiff, broke and entered into the close and parcel of land above described herein so owned and possessed by the plaintiff, and caused large quantities of gas to be carried through a certain gas main which had theretofore been laid in the ground there belonging to the plaintiff, in such manner that the plaintiff could not by ordinary observation see or become aware of the presence of said gas main; that since October 3, 1927, the defendant has maintained said gas main upon said property for transporting gas there-through, all without the knowledge, consent or approval of the plaintiff; that said gas is a commodity highly deleterious and in-

jurious to both human and plant life, which was well known to the defendant; that on October 3, 1927, said gas pipe became and was in such a weak condition that the walls thereof gave way and permitted the gas therein to escape from said main thence continuously and until December 5, 1929, into and through the soil of the property of the plaintiff and into, along and through the tile drain of the plaintiff aforesaid, and thereby did escape into and permeate the greenhouses maintained by the plaintiff upon said property, and thereby weakened and in some instances destroyed the rose plants of the plaintiff growing in the greenhouses and rendered them unproductive and incapable of producing any but a few roses of inferior quality; that when plaintiff discovered that the rose plants in said greenhouses were unhealthy and not bearing in a normal way, it exerted every reasonable means to discover the cause thereof, but owing to the fact that said gas main was concealed underneath the land of the plaintiff, the plaintiff had no knowledge of the existence thereof until about December 5, 1929, when plaintiff discovered that the gas from defendant's main was escaping therefrom and entering into the greenhouses aforesaid and injuring the rose plants therein contained; that by reason of the gas of the defendant and the injury to the rose plants by the gas escaping from the gas main as aforesaid, the quantity and quality of the roses produced by the plants in said greenhouses have been greatly diminished and many of the said rose plants were killed or rendered valueless, and the plaintiff has lost and been deprived of large gains and profits which it otherwise would have had had it not been for the wrongful acts of the defendant aforesaid and the gas escaping from the main maintained by the defendant as aforesaid and injuring the said rose plants of the plaintiff, and other wrongs to the plaintiff then and there done, etc.

In the first count in case it is alleged that it was the duty of the defendant to use due care and caution to keep said gas main in a condition well calculated to prevent the gas therein contained from escaping therefrom into the surrounding soil and not permit it to escape from said main so as to injure the property of the plaintiff; that the defendant negligently and carelessly permitted said gas main to deteriorate and the walls thereof to become weakened and perforated with holes permitting the illuminating gas which was being transported through it to escape and enter the greenhouses and thereby come in contact with, affect, injure and destroy the rose plants therein and thereby prevent said rose plants from producing large quantities of roses which they otherwise would have produced, and depriving the plaintiff of large gains and profits. Also it is alleged in this count that in the use of said gas main it was the duty of the defendant to make periodical inspections thereof for the purpose of ascertaining whether it was in a condition that would not admit gas escaping therefrom into the adjoining soil, but the defendant, wholly disregarding its duty in that regard, carelessly and negligently failed to inspect said mains and thereby ascertain, as it well might have done, that the walls of said mains were in a weakened condition and so perforated as to permit the illuminating gas therein to escape therefrom, etc.

In the second count in case it is alleged that by reason of the premises it was the duty of the defendant to use due care to maintain said gas main so that gas might not escape therefrom, but that the defendant did not exercise due care and diligence in that behalf but negligently maintained said gas main so that it became in such a weakened condition that the walls gave way and permitted the gas therein to escape therefrom through the soil and property of plaintiff and through the tile drain into the greenhouses, etc.

In the third count in case it is again alleged that it was the duty of the defendant to make periodical inspections of said gas main for the purpose of ascertaining whether it was in a condition it would not admit of gas escaping therefrom into the adjoining soil, etc., and the breach of such duty.

To the amended trespass count there are three pleas, the first of which is not guilty. In the second it is alleged that at the time said gas main was laid in and across the 4.7-acre tract, said tract was then owned and possessed by Charles E. Myers and Clara M. Hayward, as trustees of William E. Hayward, who were at said time using said tract for agricultural purposes; that on April 17, 1915, said trustees conveyed the tract to Mary E. Dennon and on the same day and year Mary E. Dennon conveyed the same to Clara M. Hayward; that plaintiff acquired title to said tract from the Pana Floral Company by deed dated March 25, 1927, and that plaintiff acquired title to the 12.86-acre tract by deed from Walter A. Amling Company October 3, 1927; that said gas main was laid in and across said 4.7-acre tract with the knowledge, acquiescence and approval of the then owner thereof, and it so remained up to and including the 5th day of December, 1929, and no remonstrance or revocation was ever made or communicated to the People's Gas Company or any of its officers or agents or vendees against, or of, the continued use of said gas main notwithstanding the fact that said People's Gas Company had used said main continuously from the time of its installation to the time when it sold and conveyed its property to the defendant; that said People's Gas Company sold and conveyed all its tangible assets and assigned its rights and privileges to operate a gas plant and to distribute gas through its mains to the defendant on the 29th day of June, 1917, and said People's Gas Company covenanted and guaranteed with and to the defendant

that it was lawfully seized of the irrevocable right to maintain its gas mains and fixtures during the life of the license granted to said People's Gas Company and all of the officers and stockholders of said People's Gas Company as individuals signed and sealed said written guaranty; that after defendant purchased said gas plant from the People's Gas Company it continued to manufacture and distribute gas through the gas mains laid and installed by said People's Gas Company under a pressure of two pounds including the gas main so laid by the People's Gas Company in 1913 or 1914 in and across said 4.7-acre tract; that the plaintiff acquired said tract on March 25, 1927, by warranty deed from the Pana Floral Company and has since owned and possessed the same and acquired the second tract (12.86 acres) by warranty deed from Walter A. Amling Company and has since owned and possessed the same; that neither defendant nor any of its officers, agents, servants or employees ever at any time invaded, intruded into or entered the second tract (12.86 acres) and that neither the defendant nor any of its officers, agents, servants or employees ever at any time or under any circumstances invaded, intruded into or entered upon the first tract (4.7 acres) and this the defendant is ready to verify.

The third plea is one of the statute of limitations of five years.

To the second plea set out the plaintiff filed two replications, in the first of which it is alleged that plaintiff acquired possession and title to the property in question without any knowledge of the existence of the gas main aforesaid on any portion of said property until December 5, 1929; that it is true that after the defendant purchased the tangible assets of the People's Gas Company it continued to manufacture and distribute gas through the main laid and installed by the People's Gas Company including the gas main

laid by that company in the year 1913 or 1914 in and across said property of which the 4.7 acres was and is a part; that defendant by its officers and agents, servants or employees did invade, intrude or enter upon any or all of said property of which the 12.86 acres was a part, and that said invasion, intrusion or entry continued from on or about October 1, 1927 until December 5, 1929 and that the defendant and its officers, agents, servants or employees did invade, intrude into or enter and trespass upon the property of which the 4.7 acres was and is a part in manner and form as plaintiff has above complained against it, etc. In the second replication it is alleged that said gas main was laid in and across said premises without the knowledge, acquiescence or approval of the then owner or owners thereof, and that at no time was said gas main either constructed or maintained upon said premises with the knowledge, acquiescence or approval of the owner or owners thereof; that said Myers and Hayward as trustees of William E. Hayward did not sell and convey said premises to Mary E. Dennon on April 17, 1915, or any other time and that neither said land nor any part thereof was ever conveyed to said Clara M. Hayward; that said gas main never remained as laid with the knowledge, acquiescence or approval of any person or persons who were at any time the owner or owners of the land and that plaintiff has at no time acquiesced in the maintenance of said gas main or approved of the maintenance or use thereof by defendant or any other person or corporation.

Plaintiff filed a general replication to the third plea, being that of the statute of limitations.

As to the three counts sounding in case the defendant filed a plea of the general issue.

This suit was instituted in the city court of the City of Pana. It is contended by appellant that a suit for trespass *quare clausum fregit* is a local action and

must be prosecuted in the forum having jurisdiction where the lands are situated and that it is neither alleged in the declaration nor proven by the evidence that the lands in question are within the city limits of the City of Pana. The lands are described in the declaration by metes and bounds and also as being in the southwest quarter of section 15, Township 11 north, Range 1 east of the Third Principal Meridian in the county of Christian and State of Illinois. A city court has the same general jurisdiction as a circuit court though limited to causes of action arising within the limits of the city. A court will take judicial notice of the limits of a city, and, where the property is particularly described in the declaration and such description shows it to be within the limits of the city, it is not necessary to specifically allege such fact. The proofs included the deeds by which plaintiff received its title to the lands in controversy and as they contain the legal description thereof they are proof that said premises are located within the city limits of the City of Pana.

This case was not tried in the city court of Pana however, but in the circuit court of Shelby county pursuant to a stipulation between the parties, and the circuit court of Shelby county entered the following order:

"Now comes this day the parties to this cause by their respective attorneys, by agreement of the parties the venue of this cause having been changed from the Pana City Court to the Circuit Court of Shelby County, it is ordered that this cause be docketed for trial at this June Term of this court and the cause is so placed on the docket."

It is contended by counsel for appellant that as trespass *quare clausum fregit* is purely a local action it must be brought in the county in which are located the

lands involved, and that this rule is one of jurisdiction of the subject matter which cannot be waived by stipulation or otherwise and that the circuit court of Shelby county obtained no jurisdiction of the cause by the stipulation. In our opinion, however, the modern tendency of the law is to do away with such technical restrictions, and, in the absence of a mandatory statute to the contrary, to consider them as questions of venue or procedure and of personal privilege only which may be waived by agreement of the parties or by their acquiescence without objection. Under the common law a local cause of action was not necessarily to be tried in the county in which the land was situated, but, by consent of the parties, the trial might be had in any other county or place that was more convenient. (40 Cyc. 41b.)

"And, as part of this doctrine, it is held also that there may be an implied assent to this incipient jurisdiction, through defendant's failure to object in the manner and within the time fixed by the statute. A similar view of the nature of local venue—that it is a personal privilege—has been reached in some states without this special aid. On general principles, and construing the statutes of venue as a whole, the courts have repeatedly held that enactments which fix the venue of a domestic cause in the county in which the subject of action is situated, although perhaps imperative in their terms, are neither jurisdictional nor mandatory, but give to the party, even when sued for real estate, the privilege of having the litigation conducted in the county in which the land lies. The result is often in seeming conflict with the letter of the statute. Its *ratio decidendi,* however, is that statutes of venue regulate, not the jurisdiction of the courts, but only their procedure. As respects jurisdiction of the subject matter, the question is not whether a particular parcel of land lies within the territorial district

assigned to the trial court, but whether this court is vested with the right to hear and determine the general subject involved in the action. If a court has the right to try title to land, the fact that the particular land in suit lies within another county of the state does indeed give defendant a right to object, but his objection is grounded in a personal privilege." 40 Cyc. 41c.

The rule as announced in 25 R. C. L. 1102, sec. 10, is:

"The doctrine is recognized in many jurisdictions that the parties to an action in which the court has jurisdiction of the subject matter may make a valid and binding agreement or stipulation to fix the venue of the action in a particular county. There are also decisions to the effect that a stipulation for the removal of a cause from one county to another waives an objection that it was not brought in the proper county."

It was held in *People v. Fisher,* 340 Ill. 250, that the constitutional provision for a jury trial of one accused of crime is not mandatory but merely confers upon the accused the right to a jury trial which privilege he may waive. The second clause, paragraph one of the Venue Act of this State (ch. 146, Cahill's Ill. Rev. St. 1931) provides:

"Where either party shall fear that he will not receive a fair trial in the court in which the suit or proceeding is pending, because the inhabitants of the county are or the judge is prejudiced against him, or the adverse party has an undue influence over the minds of the inhabitants. In any such case the venue shall not be changed except upon application, as hereinafter provided, *or by consent of the parties.*"

Thus it will be seen that a change of venue may be granted in either of one of two ways, by following the procedure thereinafter set out in the act or by

consent of the parties to the suit. The rule of law that the action of trespass *quare clausum fregit* is local and must be tried in the county in which the land is situated confers upon the defendant to such an action the right and privilege to have the cause commenced and tried in such county, but only a privilege, which may be waived by the defendant by stipulation to have the venue changed to another county. (See also 27 R. C. L. 783, sec. 6.)

Counsel for appellant claim that no recovery can be had under the amended trespass count for the reason that trespass *quare clausum fregit* will not lie if the original entry was rightful and made in a lawful manner and that the original entry in this case was so made. This contention is based upon the following facts. In 1911, one William E. Hayward owned the real estate in question. On the 28th day of December of that year he executed a deed of trust wherein he conveyed and assigned to Charles E. Myers and Clara M. Hayward, their heirs, successors and assigns, all his interest of every kind and description in and to any real estate wherever situated, etc., in trust with power to manage, care for, control, sell, mortgage or transfer the same during his life and at the termination thereof to dispose of said property in accordance with the provisions set forth in the instrument. T. J. Vidler, a witness who testified on behalf of appellant, stated that he was president and general manager of the People's Gas Company at Pana from 1911 to 1917; that he recalled the laying of the gas main in question which according to his best recollection was in 1914. He stated that he wrote to Mrs. Hayward and asked permission to lay a main across a field to Hickory street but now has no copy of that letter and Mrs. Hayward has been dead for 10 or 12 years; that in said letter be explained to her that the main would be laid at least two or two and one-half feet below the

surface of the ground and would not interfere in any way with the cultivation of the fields; that he received a reply from Mrs. Hayward but that said reply was destroyed; that he doesn't remember the language she used therein but that she referred to the letter he had written to her and the substance of it was that she told him it would be all right to lay the main; that after receiving her letter the People's Gas Company proceeded to lay the main across the Hayward field. On April 17, 1915, Myers and Clara M. Hayward as trustees conveyed said premises to Mary E. Dennon. On this same day and year Mary E. Dennon reconveyed by quitclaim deed the same to Clara M. Hayward. It will thus be seen that the title to the premises at the time the gas main was laid across them was in Meyers and Mrs. Hayward as cotrustees. It is a rule in the law of trusts that in the case of cotrustees the office is a joint one, and that where the administration of a trust is so vested all the trustees form but one collective trustee and therefore must execute the duties of the office in their joint capacity. If any cotrustee refuse or be incapable to join, it is not competent for the others to proceed without him, but the administration of the trust must in that case devolve upon the court. *Warner v. Rogers,* 255 Ill. App. 78, and cases cited therein. One of several trustees owning the title to real estate pursuant to the terms of a trust has no power alone to grant an easement in said lands either by parol or deed. In any event the lands involved in this case passed by several mesne conveyances before plaintiff acquired title thereto and any oral license or easement would cease upon the conveyance of the licensor or upon his death. Mrs. Hayward who it is claimed granted the license had been dead many years before plaintiff acquired title to the premises. The defendant company purchased the People's Gas Company and all its rights and franchises in 1917.

The evidence does not disclose that either the People's Gas Company or the defendant company ever had any lawful right to lay its gas main across the premises in question unless it can be said that the manifest weight of the evidence showed that subsequently the plaintiff had knowledge of the existence of said main and acquiesced in the maintenance thereof. This last question is one of fact and the findings of the trial court must be given full credit on all questions of fact unless they are against the manifest weight of the evidence. The trial court saw the witnesses and heard them testify and was in a better position to determine the credibility thereof than this court can possibly be. The evidence discloses that the officers of plaintiff company consisted of three brothers of which A. J. Maton is president, Paul Maton, vice president, and Arthur Maton, secretary. There is some evidence that this gas main was extended east in either 1926 or 1927 and that while the excavation was being made, these brothers saw the work being done and that one of them permitted the workmen to search for the main a few feet from plaintiff's east property line. The evidence is conflicting as to when this work was done. Each of the brothers denies that he ever saw any extension work on this main or granted the permission claimed. Each of them testified that he never even knew of the existence of this main until the latter part of November, 1929. It was for the court to determine from the testimony on this point and from all the evidence in the case which witnesses were more worthy of credit. The manifest weight of the evidence does not show that the plaintiff company ever had any knowledge of the existence of the main across their property until after their plants began to deteriorate and die.

Counsel for appellant also maintain that as the gist of an action *quare clausum fregit* is the breaking and entering, by force and arms, of appellee's close, the

evidence will not support the amended trespass count because the entry was made in 1914 when appellee did not own the premises in question, and furthermore, that the ejection of gas upon the premises was not an act of trespass with force and arms, etc. The People's Gas Company laid its main across these lands in 1914 without any lawful authority. When appellant purchased the plant from the People's Gas Company in 1927 it acquired no more right in the maintenance of the main than the People's Gas Company had. The maintenance of this main has been a continuing trespass notwithstanding that appellee had no knowledge thereof. The escape of gas therefrom was the result of the unlawful construction and maintenance of the main on the premises. The trespass need not be in person but may be by casting something on the land or projecting anything into, over, or upon the same. (38 Cyc. 996.) In *Tobin v. French,* 93 Ill. App. 18, it was held that the throwing of dirt, dust and lime by a landlord in the course of making repairs to a portion of an apartment building was a trespass against the tenant of another portion of the building. The projection of any substance upon the lands of another without right is a trespass.

Under the negligence counts it is charged that it was the duty of appellant to use due care to keep its gas main in a condition calculated to prevent the gas therein contained from escaping and to make periodical inspections of its mains and the breach of these duties. The evidence shows that the original pipe laid across the premises had a diameter of two inches and was of ordinary black iron and had remained in the ground with no covering or protection, except the soil, for a period of 15 years, during which time appellant had made no inspection thereof. The evidence shows that when the pipe was uncovered gas was escaping in considerable quantity from a hole therein and sections

of the pipe were introduced in evidence, have been certified to this court for our inspection and show that it was very much deteriorated by rust and corrosion and that it is a matter of common knowledge that an iron pipe buried in the ground for a long period of years will rust and corrode. In 12 R. C. L. 907, sec. 47, it is held: "A gas company not only must see that its pipes and fittings are of such material and workmanship and are laid in the ground with such skill and care that gas will not escape therefrom when new, but it must maintain such a system of inspection as will insure reasonable promptness in the detection of leaks that may occur from the deterioration of the material of the pipes, or from any other cause within the circumspection of men of ordinary skill in the business; and a failure to take such precaution is negligence." In 28 C. J. 592, sec. 57, it is held: "The foregoing rule requires not only a careful laying of sound pipes, but also requires an efficient system of inspection, oversight, and superintendence. A gas company must use due and reasonable care in the inspection of its pipes, to insure reasonable promptness in the discovery of leaks that may occur from defects in or *deterioration of pipes* and valves, from careless or wrongful meddling with its works on the part of others, or from any other cause within the circumspection of men of ordinary skill in the business." And in sec. 58, it is further stated: "If leaks or defects in the company's pipes occur because of faulty construction or otherwise through the company's fault, it is liable without notice for any resulting injury to person or property. The question of defendant's liability in such a case is not dependent upon its knowledge of the pipe's defective condition or the escaping gas, but upon the observance or neglect of care."

The courts of this State have recognized the fact that illuminating gas, being lighter than air, has a

tendency to rise and to seep through the soil following a line of least resistance. *Baudler v. People's Gas Light & Coke Co.,* 108 Ill. App. 187; *Rockford Gas Light and Coke Co. v. Ernst,* 68 Ill. App. 300. In the latter case it is held: "If injury is done to adjoining property by reason of defective material used in pipes employed to convey the gas along the streets of a city, because of the imperfect manner in which the pipes are laid, or because of failure to repair breaks, whether caused by its own fault or that of another, the injured property owner has a right of action to recover for all damage sustained by him. In case of a break, if it occurs through its own fault, the company is liable without notice. If it occurs through the fault of another, liability attaches as soon as the company has had notice and time to repair. If a reasonable inspection of the mains and pipes of a system would have discovered a leak, and such was not made, the company would be liable. If the damage occurs from a break which has existed for several days, and which could have been discovered by proper inspection, that is, of itself, evidence of negligence." In the case of *Aurora Gas Light Co. v. Bishop,* 81 Ill. App. 493, gas escaped from a broken main through an abandoned sewer pipe into the home of the plaintiff. The employees of the gas company, in searching for the leak, lighted a torch to the escaping gas in the street, an explosion followed in the basement of the plaintiff's building damaging the same and the defendant was held liable on the ground of negligence in not maintaining its pipe in a proper condition so that gas would not escape therefrom. There have been numerous cases where damages have been recovered for injuries done by gas escaping through the soil or sewers, among which are *Butcher v. Providence Gas Co.,* 12 R. I. 149; *Dow v. Winnipesaukee Gas & Electric Co.,* 69 N. H. 312; *Grimes v. Minneapolis Gas Light Co.,* 133 Minn. 394.

It is strenuously insisted by counsel for appellant that there is no evidence that gas was ever present in the greenhouses of appellee or that there was any injury to appellee's rose plants from gas prior to December 4, 1929. The whole tract of land comprises 17.56 acres. There were seven different groups of greenhouses which were designated as ranges one to seven, inclusive. Range two lies immediately north of range 1. The gas main in question ran substantially east and west between ranges one and two. A tile drain ran north through range one, thence northeasterly through range two. From the main drain, lateral drains extended east and west in both ranges. The injuries to the plants were limited to the houses on ranges one and two and no plants were damaged except those contained in the houses on these two ranges, and the sewer in question did not extend to any of the ranges or houses therein where no damage was sustained. The sewer pipe crossed over the gas main at right angles and two or three inches above it and the hole in the main through which the gas escaped. The evidence further shows that the same varieties of roses which were grown in ranges one and two were grown in the other ranges which were unaffected; that all the roses were propagated under proper rules of cultivation and in the same manner, with the same soil, with the same temperatures and under the same supervision. The testimony does show that no gas was detected in the greenhouses by the sense of smell but it was further proven that the poisonous element in illuminating gas might be present in sufficient quantities to destroy roses or plant life without being susceptible of discovery by the sense of smell. During the process of deterioration the foliage on the plants began to curl and drop, some of the flowers became flat and ill-shaped, a few plants

bloomed but the blossoms were brown around the edges and on others the buds fell off. A great many plants were killed and a great many produced no flowers at all. Expert rose growers of large experience, some of them being instructors in floriculture in universities and institutes, testified from examination of the plants that their condition might have been caused by the ethylene, the active principle in illuminating gas, and some of them were positive that their condition was so caused. The fact that gas escaped from appellant's main, that it would naturally follow the course of least resistance through the sewer pipe and enter the greenhouses, that it would naturally have a poisonous effect upon the plants in such greenhouses and produce the condition shown, the fact that there was evidence that there was no other discoverable cause for producing such condition and the further testimony of experts that the actual condition of the plants was caused by gas was sufficient proof to sustain the finding that the injuries to the plants were in fact caused by the escape of gas from the defective main of the appellant company.

As to the defense of the statute of limitations, from what we have said herein, it will be recognized that under the facts in this case, this being a continuing trespass, that statute is inapplicable.

The question of the measure of damages in such a case as this is subject to much difficulty. From what we have been able to learn from the authorities submitted by counsel for both parties and from our own personal research, there has been no adjudication thereon applicable to the facts in this case. These rose plants were not attached to the soil but were propagated in greenhouses in benches or troughs raised above the soil, and were, therefore, personal property. In passing upon this question we have no rule of

adjudication to guide us except the general one that in actions of this kind a plaintiff is entitled to all the damages which naturally follow from the commission of the tort. Neither party is satisfied with the method adopted in the assessment by the court. The appellee has filed cross errors claiming that the amount of damages as shown by the evidence should have been assessed at $311,098.15, while the appellant claims the damages assessed were erroneous because they claim the evidence discloses that appellee never produced the number of roses that the witnesses said would be a normal production; that they might have been injured by a great many other different things; and that the evidence shows there had been a steady decline in the production thereof when no gas injury was claimed. Both parties do agree, however, substantially on the average price of roses during the period of their deterioration and loss. An accountant for each side submitted a computation which, for all practical purposes are identical, the variations being within a one-hundredth of a cent. The court took the average normal production of roses for each variety in the different ranges and compared it with the production of such roses after they became affected with the gas and found that the loss of production in range 2 was 816,762 roses and the loss in range one amounted to 844,275. He applied the average market price as furnished him by the accountants of both parties and the total amounts to $79,029.86. In addition to this there was a loss of 156,700 grafted plants and the court found that the evidence showed that in grafted plants there is always a normal loss of 10 to 15 per cent, and an average of 12½ per cent, and deducted this amount of loss. The evidence further disclosed that the manetti stock used in the grafting was used a second time and deducted $1,000 therefor, leaving the net

loss of grafted plants at the sum of $10,290.30. We do not understand that there is any complaint against this item. The above amount added to the $79,029.86 makes up the judgment of $89,320.16. No absolute computation of damage of course can be made, but the contentions advanced by appellant that the finding of damages by the court was inaccurate and not in accordance with the true measure of damages for the reasons hereinabove stated do not appeal to us as having much merit. Nor are we impressed with the cross error of appellee that the damages should have been in fact $311,098.15. The principal item of this claim amounts to $153,487.97 for loss on the quality of roses sold which was disallowed by the court. The claim of appellee in this regard is that the sale of these roses had a tendency to reduce the price of all roses which it sold. An estimate upon such a loss could only be based largely upon conjecture and uncertainty. Appellee also claims that the court should have included damages to the amount of $51,800 for 56,000 plants which might have been affected to some extent by the gas, but which were removed from the range, on the ground that this variety were worth $1 per plant and were sold for 7½¢ each. The proofs showed that these plants were 18 months old and were capable of producing normal quantities of marketable flowers if removed from the presence of the gas. The proofs further show that before the gas injury appellee had removed some 68,500 plants of this variety from their ranges and had appreciably reduced its stock of this particular variety. Whether they were sold on account of their depreciation by being exposed to the gas is not clear and we are not in a position to say that the court should have included any such amount in its assessment on the grounds urged. In regard to the other items which appellee claims should have been

included as damages they consist mostly in disagreement with the trial court on his method of ascertaining the average number of plants which were injured or lost. The trial court went into the whole matter of damages with great care and thought and in our opinion his finding on that question, while possibly conservative, was on the whole just and supported by the evidence.

The record in this case consists of over 2,600 pages including a great many exhibits. These exhibits are indexed only by their numbers. Rule four of this court deals with the preparation of abstracts and among other things states: ''The index must give not only the number of each exhibit and document in evidence, but must also describe it by its character, parties, date, etc. so as to distinguish it from every other exhibit or document in the record.'' We have been put to much unnecessary labor and loss of time in searching the abstract and record for the exhibits. An index of this character is not only useless to a court of review but causes great inconvenience.

We find no reversible error in the record and the judgment of the circuit court is affirmed.

*Affirmed.*